**CAREY v. BRADY, Warden.**

**GALL v. SAME.**

**Nos. 4851, 4853.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 12, 1942.

G. Van Velsor Wolf, of Baltimore, Md., for appellants.

Robert E. Clapp, Jr., Asst. Atty. Gen. of Maryland, and Morton E. Rome, Asst. State's Atty., of Baltimore, Md. (William C. Walsh, Atty. Gen. of Maryland, J. Bernard Wells, State's Atty., of Baltimore, Md., Lawrence E. Ensor, State's Atty., of Towson, Md., and John Grason Turnbull, Asst. State's Atty., of Baltimore, Md., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PER CURIAM.

These are appeals by petitioners in habeas corpus cases from orders denying their prayers for release and remanding them to the custody of the warden of the Maryland petitentiary. Petitioners in both cases were convicted in Maryland State courts of the crime of burglary and were sentenced to terms of three and five years respectively. The maximum sentence for burglary in Maryland is twenty years. Each prisoner petitioned the court below for a writ of habeas corpus after unsuccessful application to the State courts. The facts are fully stated in elaborate opinions filed by the judge of the lower court. See Gall v. Brady, D.C., 39 F.Supp. 504; Carey v. Brady, D.C., 39 F.Supp. 515.

In Carey's case, it appears that, upon arraignment, he requested that counsel be assigned him and was advised by the judge then sitting that it was not customary to assign counsel in cases of that character. His case came on for trial before another judge and he did not renew the request and no counsel was appointed to represent him. The same facts appear in Gall's case, except that he was charged with burglary in two indictments and after conviction under one of them he voluntarily pleaded guilty to the charge contained in the other. He was given in each case a sentence of five years to run concurrently with that imposed in the other. In neither of the cases before us was there anything to indicate that any advantage was taken of the petitioner by the prosecutors or anyone else, that any defenses were suppressed or inadequately presented, or that petitioner did not receive in all respects a fair and impartial trial at the hands of the court. The petitioners in both cases were mature men with substantial criminal records and presumably not unfamiliar with the processes of the courts. With respect to Carey the Judge found:

"I find as a fact from the testimony in the case that Carey's trial before Judge Grason was in all respects fair and consistent with due process, unless the failure of Judge Lawrence to appoint counsel at Carey's request constituted lack of due process. I find that Carey did not request Judge Grason to appoint counsel for him or make any showing of facts from which Judge Grason should have made the appointment of counsel."

With respect to Gall, the finding was: "The only circumstance here presented

which could possibly be considered as tending to show lack of due process is the failure to appoint counsel. The case is entirely devoid of associated facts, such as appeared in Powell v. Alabama, and Smith v. O'Grady, on which the respective decisions were based. Here the petitioner was indicted in the city of his residence, was surrounded by his relatives, had the opportunity to summon witnesses for his defense, freely elected to be tried by the judge without a jury, could have secured a further postponement of his case if he had asked for it, and had a trial which in itself was in all respects fair, and indeed is criticized only because of the absence of counsel. Whether counsel should be appointed in any particular Maryland criminal case is by the local statute committed to the judicial (but presumably appealable) discretion of the judge before whom the defendant appears. There is nothing in this case to show that this discretion was abused by either judge who touched the case; nor does it appear that the circumstance of the petitioner's case in this respect is different from many hundreds of substantially similar cases which have been tried in the Criminal Court of Baltimore in recent years, in accordance with the practice prevailing for at least fifty years."

 We agree with the judge below that, in view of the contention of petitioners that they had been denied due process and had exhausted their remedies in the courts of the State of Maryland, it was proper for him to issue the writ of habeas corpus for the purpose of inquiring into the legality of their imprisonment. Frank v. Mangum, 237 U.S. 309, 327, 35 S.Ct. 582, 59 L.Ed. 969; Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406. We agree also that there was nothing in the evidence before him to show that either of the petitioners was denied due process, unless the failure to appoint counsel for them amounted of itself to such denial. On this question, the members of the court, after carefully studying the decisions of the Supreme Court in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Palko v. Connecticut, 302 U.S. 319, 327, 58 S.Ct. 149, 82 L.Ed. 288; Lisenba v. California, 62 S.Ct. 280, 86 L.Ed. ——, decided Dec. 8, 1941, Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L. Ed. 830, and a number of other recent decisions are divided and in doubt. One member of the court is of the opinion that the mere failure of the State Court, upon request, to appoint counsel for an indigent prisoner does not amount to a denial of due process in the absence of other circumstances showing that such appointment is necessary to a fair trial, such as the youth and inexperience of the prisoner or complicated nature of the charge, the inflamed state of the public mind, acts of oppression on the part of public officers, &c., and that if such failure to appoint counsel should be held to be a denial of due process, it is not such a denial as would destroy the jurisdiction of the court to proceed with the trial of the case. Another member of the court is of the view that such failure to appoint counsel is a denial of due process that would justify a reversal of the judgment upon appeal, but is not sufficient of itself to destroy the jurisdiction of the court and authorize the release of the prisoner, after sentence, on habeas corpus. The third member of the court is of the opinion that such a failure is of itself a denial of due process that destroys the jurisdiction of the court and entitles the prisoner to release on habeas corpus. Widespread confusion seems also to exist in the minds of judges and lawyers throughout the country with regard to these questions. See Wilson v. Lanagan, 1 Cir., 99 F.2d 544, certiorari denied 306 U.S. 634, 59 S.Ct. 486, 83 L.Ed. 1035; Sanford v. Robbins, 5 Cir., 115 F.2d 435, certiorari denied 312 U.S. 697, 61 S.Ct. 737, 85 L.Ed. 1132; Boyd v. O'Grady, 8 Cir., 121 F.2d 146.

In view of the conflicting views of the members of this court on this appeal, it is obvious that no opinion can be written that will be useful as an authoritative precedent upon the questions involved; but as it is the opinion of the majority of the court that the State Court did not lose jurisdiction by the failure to appoint counsel for the prisoners, it follows that the order of the District Court dismissing the petition for writ of habeas corpus must be affirmed in each case.

The court acknowledges its indebtedness to Mr. G. VanVelsor Wolf of the Baltimore Bar, who was appointed by the court to present the cause of appellants, and who has discharged that duty ably and conscientiously.

Affirmed.