AMRINE, Warden of Kansas State Penitentiary, v. TINES.

No. 2516.

Circuit Court of Appeals, Tenth Circuit.

Nov. 2, 1942.

Jay Kyle, Asst. Atty. Gen. of Kansas (Jay S. Parker, Atty. Gen. of Kansas, on the brief), for appellant.

Irving Lindner, of Denver, Colo., for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Milton F. Amrine, Warden of the Kansas State Penitentiary, appeals from a judgment of the United States District Court of Kansas ordering the appellee, Jesse B. Tines, discharged from his custody pursuant to a hearing on appellee's application for a writ of habeas corpus.

In his application for the writ, appellee alleges in substance that he is illegally restrained of his liberty in the custody of the appellant because his trial and conviction in the state court, pursuant to which he is imprisoned, was lacking in those constitutional safeguards essential to due process and equal protection of the law under the Sixth, Thirteenth and Fourteenth Amendments to the Constitution of the United States. Specifically he alleges that he was, (1) denied compulsory process of witnesses in his behalf; (2) denied the benefit of counsel at all necessary stages of the trial which resulted in his conviction and servitude; and (3) twice placed in jeopardy for the same offense.

The judgment of the trial court is twofold: (1) the appellee did not have the benefit of counsel at all necessary stages of the proceedings, which resulted in the conviction and sentence in violation of his

constitutional guarantee under the Sixth Amendment to the Constitution of the United States; and (2) the appellee was twice placed in jeopardy for the same offense in violation of the Fifth Amendment to the Constitution. The findings and judgment of the trial court are void of any reference to violation of constitutional rights and immunities secured under the Fourteenth Amendment to the Constitution, generally thought to be essential to Federal jurisdiction to correct state process in a criminal proceedings. The facts as reflected by the record before us may be summarized as follows.

On September 20, 1930, the appellee, as Jesse B. Tines, was charged by information No. 73494 in the District Court of Sedgwick County, Kansas. The information containing two counts charged that on April 26, 1930, the appellee forged a certain bank check drawn on the Union National Bank at Wichita, Kansas, and with falsely uttering the same. The case came on for trial on or about November 26, 1930, in the District Court of Sedgwick County, Kansas. A jury was duly impanelled; the state completed its case and rested, whereupon the court, apparently upon its own motion, but without objection from either party, entered the following order: "Now, on ——— this cause is dismissed—defective information, at the cost of the plaintiff, without prejudice." It does not appear that the appellee was discharged or released from custody, but on January 6, 1931, he was again charged by information No. 74984 in the same jurisdiction. The information contained two counts charging forgery of the same instrument as described in information No. 73494, and with falsely uttering the same. The only material change in the language employed to describe the offense is found in the first count of the second information, wherein it is alleged that "Tines did then and there affix fictitious names, to-wit: F. J. Mannett and K & M Desicating Company." The first information did not so allege, and the second information was no doubt designed to cure the defect in the first by alleging in statutory language that the names affixed to the forged checks were fictitious. See General Statutes of Kansas, 1935, 21-628.

The appellee was represented by Attorney Helm at the preliminary hearing on the second information of which there is no record. The transcript of the proceedings in the state court, which was introduced by the appellee in the proceedings below as an exhibit, reflects that when on January 12, 1931, appellee appeared before the state district judge, he was by the court asked if Helm represented him, to which he replied that Helm had represented him in the preliminary hearing only and did not then represent him. The court then asked if he wished to have another attorney appointed, to which he replied, "No Sir." The cause was set for trial on January 20, 1931, and the appellee was returned to jail. Two days thereafter and on January 14, 1931, the appellee again appeared in court before the same judge when the court stated, "You were over here on the first day of the term. I told you at that time that your case was set for the 20th of January." Answer, "Yes, sir." The court, "You stated at that time you didn't have any attorney and that you didn't expect to get one?" Answer, "Yes, sir." The court, "How do you expect to get your witnesses?" Answer, "Well, I supposed that they would let me come over here or bring a list over here." The court, "Do you have your list made up?" Answer, "I could make it out in a very few minutes." Whereupon the court told the defendant to make up a list of witnesses and file it with the clerk so they could be subpoenaed in order not to delay the trial, and "In order that you may have someone to represent you on the outside while you are waiting, I am appointing Benjamin H. Brown to represent you up to the time of trial, at least, so he can help you to prepare to get your evidence before the court." The appellee thanked the court and the court again told the appellee to get his witness list ready, that he would get word to Mr. Brown that he had been appointed.

The transcript further reveals that on January 20, 1931, the case came on regularly for trial pursuant to assignment. The appellee appeared in person and by his attorney Benjamin H. Brown. The court inquired if the parties were ready in State vs. Tines to which Mr. Brown answered. "The defendant is ready." The court observed that the defendant had not been arraigned, to which the defendant (appellee here) answered, "Waive arraignment." The court said, "Do you waive arraignment?" The attorney, Mr. Brown, answered, "Waive arraignment and plead not guilty." Defendant, "A number of my witnesses are not present yet." The court, "You probably won't need them for some time. Bring in a jury." Prospective ju-

rors were called and sworn to answer questions touching their qualifications. At this point, the defendant stated that before any questions were asked the prospective jurors, he would like to ask a question, "I would like to enter a motion. This case was tried in Division Number Three before Judge Pierpont and the State's evidence went to the jury." The court overruled the motion and a jury was selected to try the case, at which point the defendant stated, "I wish to enter an objection to proceeding further until my motion is heard," to which the court replied, "Your motion is heard and overruled."

Mr. Mayall, state counsel, stated, "I would like to ask that the court appoint an attorney for Mr. Tines if he so desires." The court, "I have appointed one for him. Do you wish another appointed for you?" The defendant answered, "No, sir." The defendant questioned the prospective jurors on voir dire, intelligently exercising his peremptory challenges; made his opening statement to the jury in which he defined the issues, and stated his defense with clarity and without evidence of ignorance or unfamiliarity with the law of the case or proper procedure. The appellee cross-examined the state's witnesses, introduced evidence in his own behalf, and took the witness stand in his own defense. In the course of the trial, the appellee observed,, "It seems to be the attitude of everybody in here to try to hamper the defendant," whereupon the court said, "The court appointed an attorney for you and you would not allow him to serve and you will have to do the best you can for yourself." The appellee demurred to the evidence of the state which was overruled. On cross-examination, the defendant testified that he had been convicted three times previously, had served two terms in the Kansas State Penitentiary, and one in the federal penitentiary. After argument by the state and the defendant, the case was submitted to the jury on the second day of the trial.

A verdict of guilty was returned on the first count of the information. (Apparently the appellee was acquitted on the second count.) On March 28, 1931, the case came on for hearing on motion for new trial. The appellee appeared in person and by his attorney J. W. Ward. It is not clear just how or in what manner, but the record discloses that the plea of former jeopardy was again raised, considered by the court, and overruled. When the defendant was asked if he had any reason to assign why sentence should not be passed upon the verdict of the jury, the defendant called the court's attention to his plea of former jeopardy at the beginning of the trial, and to his lack of assistance of counsel, to which the court answered, "You will admit the court offered to provide you with counsel," to which the defendant answered, "Yes, sir. I admit that but I tried to express to the court my personal reasons why I didn't care to accept the counsel that the court wished to appoint but you overruled me and wouldn't hear to it."

By reason of the established fact that the defendant had thrice before been convicted of a felony, the court imposed a mandatory sentence of life imprisonment. After sentence was imposed, the appellee asked that the execution of the sentence be stayed for ninety days in order to perfect an appeal to the Supreme Court of Kansas, and the court granted a thirty day stay. No appeal was taken from the judgment of the sentencing court and the appellee was duly committed to the custody of the appellant.

On the trial of the case below the appellee testified, in contradiction of the record which he had introduced in evidence, that the sentencing court did not appoint Benjamin H. Brown as his attorney as reflected by the record, but that Lawyer Woodward was appointed, took the list of witnesses, and had them subpoenaed; that Brown did not appear in the case at any stage of the proceedings. He did not testify however, that he was not represented by counsel on the date he waived arraignment, entered his plea of not guilty, and announced ready for trial. The record indicates that he was not represented by an attorney in the trial proceedings. In the habeas corpus proceedings below, the appellee testified that his attorney, Fred Helm, raised the question of double jeopardy on preliminary hearing before the justice court, and this is not contradicted on the record here.

On June 4, 1935, June 3, 1936, and May 15, 1937, the Supreme Court of Kansas summarily considered separate applications of the appellee for a writ of habeas corpus, and severally denied the same without opinion. These applications are not incorporated in the record before us, however we will assume that they were sufficient in form to adequately invoke all of his constitutional rights available to him there, as well as here. On October 29,

1940, the District Court of Sedgwick County, Kansas, sustained a demurrer to the application of the appellee for a writ of coram nobis, in which application the appellee sought release from custody on the grounds that he had been twice placed in jeopardy for the same offense. The instant case was commenced in the United States District Court on December 2, 1940. The District Court appointed counsel and conducted hearings, which resulted in the judgment from which this appeal is taken.

The contention that the appellee was denied compulsory process of witnesses in violation of his constitutional rights was not pressed in the trial court. The record touching this point shows clearly that the state trial court appointed counsel for the purpose of having witnesses subpoenaed, and apparently all material witnesses did appear. The trial court made no findings and conclusions thereon, hence we pass the question without further comment.

The trial court has found that the appellee did not have the benefit of counsel at all necessary stages of the proceedings which has resulted in his imprisonment. Apparently for that reason the court concluded that his right to the assistance of counsel, guaranteed by the Sixth Amendment to the Constitution, had been violated. The trial court did not however specifically hold that the failure to have counsel at all necessary stages of the proceeding constituted a denial of due process or a right or immunity secured to all persons by the Fourteenth Amendment to the Constitution of the United States.

Since the only source of power of the Federal court to correct the processes of the state court in this case must rest upon the premise that the processes of the state court are repugnant to rights guaranteed to all persons under the Fourteenth Amendment, it is doubtful whether the judgment of the trial court rests upon valid jurisdictional grounds. Since, however, the trial court has held in effect that a constitutional right, guaranteed by the Sixth Amendment to the Constitution, has been violated by the State of Kansas, we will assume that its findings were broad enough to include a violation of the due process clause of the Fourteenth Amendment, and that such was the basis for its decision.

 The right to the effective assistance of counsel in a criminal proceedings, guaranteed by the Sixth Amendment to the Constitution, is a basic and fundamental right secured to every person by the due process clause of the Fourteenth Amendment. Powell v. Alabama, 287 U.S. 45, 68, 71, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859. The denial of that right by an agency of the Federal government is cognizable in the Federal courts as a violation of a constitutional right, protection against which every person is afforded by the Sixth Amendment to the Constitution, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, while the denial of the assistance of counsel by an agency of a sovereign state is cognizable in the Federal courts only insofar as it is deemed a denial of due process of law under the Fourteenth Amendment. Powell v. Alabama, supra; Smith v. O'Grady, supra. It is sufficient therefore to say that the scope of Federal inquiry is defined by the question of whether, under the attendant facts, the appellee was accorded due process of law in the trial which resulted in his conviction and subsequent confinement under the authority of state process.

 A proper consideration of this question requires us to first determine whether the appellee has exhausted all of the remedies afforded him by the law of the State of Kansas, since upon the courts of that State, equally with the courts of the United States, rests the obligation to guard and enforce every right secured by the Constitution. But the appellee has applied to the Supreme Court of Kansas and to the District Court of that State for redress of the alleged wrongs, and each has summarily heard and summarily denied without opinion. We are therefore at liberty to assume that he has fully exhausted the remedies available to him there. Robb v. Connolly, 111 U.S. 624, 627, 4 S.Ct. 544, 28 L.Ed. 542; Mooney v. Holohan, 294 U.S. 103, 113, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Smith v. O'Grady, supra; Gebhart v. Amrine, 10 Cir., 117 F.2d 995; Achtien v. Dowd, 7 Cir., 117 F.2d 989. It follows that habeas corpus in the Federal court is available to challenge the cause of his imprisonment insofar as the trial and conviction in the state court was repugnant to due process of law, guaranteed to the appellee by the Fourteenth Amendment, and if it is shown from this record that the trial in the state court was so lacking in those fundamental precepts of justice as to amount to a denial of due process of law, its judgment ordering the

appellee's release is correct and should be affirmed. Mooney v. Holohan, supra; Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Achtien v. Dowd, supra; Gebhart v. Amrine, supra; Carey v. Brady, 4 Cir., 125 F. 2d 253.

 In a Federal criminal proceedings, if the accused "is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty." Johnson v. Zerbst, supra, 304 U.S. at page 468, 58 S.Ct. at page 1024. For the purposes of this case, we may assume without deciding that the rule adopted for guidance of the Federal courts under the requirements of the Sixth Amendment, when translated in terms of due process of law under the Fourteenth Amendment, applies with equal force to trials in a state court. Powell v. Alabama, supra. Cf. Carey v. Brady, supra; Boyd v. O'Grady, 8 Cir., 121 F.2d 146. We do not suppose that because an accused waives counsel and elects to represent himself that his trial and conviction could not result in a denial of due process of law in a state court as well as a Federal court. Due process of law, as we comprehend it, does not necessarily include or exclude representation by counsel. The substance of due process may be denied although the accused is represented by a coterie of counsel, yet he may have it although unaccompanied by counsel. Due process, or the lack of it, is based upon substance and not form. Powell v. Alabama, supra; Norris v. State of Alabama, 294 U.S. 587, 590, 55 S.Ct. 579, 79 L.Ed. 1074; Avery v. State of Alabama, 308 U. S. 444, 60 S.Ct. 321, 84 L.Ed. 377; Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716. Lisenba v. People of State of California, 314 U.S. 219, 236, 62 S.Ct. 326, 86 L.Ed. 166. In any event, the right to assistance of counsel is a personal right and may be waived, and if the accused is otherwise accorded a fair trial which embraces an opportunity to be heard, after due notice, he cannot complain of the failure to have counsel for his defense. Johnson v. Zerbst, supra.

 Since this is a collateral attack on a judgment of a state court by the extraordinary remedy of habeas corpus, we will indulge in the regularity of the proceedings, and the burden is upon the appellee to show by a preponderance of the evidence that the absence of counsel for the defense resulted in a denial of due process of law. In re Wood, 140 U.S. 278, 289, 11 S.Ct. 738, 35 L.Ed. 505; McElvaine v. Brush, 142 U.S. 155, 160, 12 S.Ct. 156, 35 L.Ed. 971; Brown v. State of New Jersey, 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119; Moore v. Dempsey, supra; Mooney v. Holohan, supra. Cf. Johnson v. Zerbst, supra.

 From the whole record, it is unmistakably clear to us that the appellee was convicted by the verdict of a jury fairly arrived at after adequate notice of trial and opportunity to prepare for his defense; and the offer of the court to appoint counsel, not only to prepare for trial but to assist in his defense on the trial. He was fifty-one years of age and no stranger to the courts; he refused repeated offers for counsel and elected to conduct his own defense which he did, apparently without undue handicap. We conclude in these circumstances that the failure to have counsel in the actual trial of the case did not amount to a denial of due process of law under the Fourteenth Amendment.

 The contention of the appellee, upheld by the trial court, that he was twice placed in jeopardy for the same offense in violation of his constitutional rights, like the question of the right to assistance of counsel, must rest upon the dominant command of the Fourteenth Amendment. And, unlike the fundamental right to assistance of counsel granted by the Sixth Amendment to the Constitution, the right not to be twice placed in jeopardy for the same offense granted by the Fifth Amendment, is not generally regarded as a member of that family of fundamental rights coming within the scope and protection of the due process and privileges and immunities clause of the Fourteenth Amendment, and from which is derived Federal power to correct state process. Maxwell v. Dow, 176 U.S. 581, 20 S.Ct. 448, 44 L.Ed. 597; Dreyer v. State of Illinois, 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79; Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288. Cf. Hurtado v. People of State of California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232; Gaines v. State of Washington, 277 U.S. 81, 86, 48 S.Ct. 339, 72 L.Ed. 793; see, also, West v. State of Louisiana, 194 U.S. 258, 24 S.Ct. 650, 48

L.Ed. 965; Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

▆▆ Obviously, if the right sought to be vindicated does not come within the dominant command of the Fourteenth Amendment, jurisdiction to inquire concerning the cause of restraint does not exist in the Federal court, either by habeas corpus or appropriate review on appeal. But courts which have had occasion to consider the question have deliberately refrained from completely closing the door to Federal inquiry. They have been content with the answer that double jeopardy did not factually exist when measured by the Federal rule. In re Wood, supra; McElvaine. v. Brush, supra; Murphy v. Com. of Massachusetts, 177 U.S. 155, 20 S.Ct. 639, 44 L. Ed. 711; Dreyer v. State of Illinois, supra; Keerl v. State of Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734; Palko v. State of Connecticut, supra. But see Ex parte Ulrich, D.C., 42 F. 587; Id., D.C., 43 F. 661. We find it proper to do likewise.

▆▆ It is urged that habeas corpus will not lie in a Federal court to test the cause of restraint based upon an allegation of double jeopardy, effected through Federal processes, Ex parte Bigelow, 113 U.S. 328, 5 S.Ct. 542, 28 L.Ed. 1005, and that this rule applies with even greater force when state process is challenged in a Federal court by habeas corpus proceedings. It is also urged that under Kansas law, double jeopardy is a special defense which must be specially pleaded in order to constitute a valid defense to second jeopardy, and that habeas corpus does not lie in the state court to correct state processes based upon double jeopardy. In re Terrill, 58 Kan. 815, 49 P. 158; Miller v. Case, 7 Kan.App. 686, 51 P. 922; State v. Hager, 61 Kan. 504, 59 P. 1080; State v. White, 71 Kan. 356, 80 P. 589; Ex parte Gano, 90 Kan. 134, 132 P. 999; In re Johnson, 117 Kan. 136, 230 P. 67. It is true that Kansas is free to pursue its chosen policy of criminal jurisprudence so long as it does not run afoul of the protective safeguards of the Federal Constitution. Leeper v. State of Texas, 139 U.S. 462, 11 S.Ct. 577, 35 L.Ed. 225; Avery v. State of Alabama, supra, 308 U.S. at page 446, 60 S.Ct. 321, 84 L.Ed. 377. But we deem it now well settled that whenever it is made to appear on a petition for a writ of habeas corpus that the applicant is held in virtue of state or Federal processes in violation of his constitutional rights, it is the right and the duty

of the Federal court to which the petition is addressed to make sufficient inquiry to determine the verity of the petition; and if it is found upon appropriate inquiry that a right guaranteed by the Federal constitution was violated in the course of the trial, conviction, and sentence, redress for which has been sought and denied elsewhere, habeas corpus will lie to correct the abuse. Hans Nielsen, Petitioner, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118; Frank v. Mangum, supra; Moore v. Dempsey, supra; Mooney v. Holohan, supra; Clawans v. Rives, 70 App.D.C. 107, 104 F.2d 240, 122 A.L.R. 1436; Achtien v. Dowd, supra; Gebhart v. Amrine, supra; Carey v. Brady, supra.

▆▆ Since the right granted and sought to be vindicated is founded in the Federal Constitution, the question whether the appellee has by his trial and conviction been twice placed in jeopardy for the same offense, is governed by Federal law and not by the law of the State of Kansas as the appellant urges. Generally, second jeopardy does not attach unless the first indictment, information, or complaint, is valid, or unless the accused is tried and convicted or acquitted on the first indictment. If the trial fails other than on the merits, and the accused does not seasonably object to the dismissal, a second trial for the same offense does not constitute double jeopardy. 22 C.J.S., Criminal Law, § 246, p. 383, and § 253, p. 390; United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165; Simmons v. United States, 142 U.S. 148, 12 S. Ct. 171, 35 L.Ed. 968; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300; Dyer v. State of Illinois, supra; Keerl v. State of Montana, supra; Palko v. State of Connecticut, supra; Pratt v. United States, 70 App.D.C. 7, 102 F.2d 275; Clawans v. Rives, supra. Cf. Murphy v. State of Massachusetts, supra. There are notable exceptions to the rule, but they cannot assist the appellee here. See 22 C.J.S., Criminal Law, § 246, p. 383, et seq.

▆▆ Without objections from the appellee or the state, the trial court dismissed the cause without prejudice, and that judgment of dismissal is final and conclusive. The appellee was not discharged from custody, and the state, acting under statutory authority (see Kansas Gen.Stat.1935, Secs. 62-1441, 62-1443 and 21-115) charged the appellee by a second information designed

to cure the defect in the first. It is clear therefore that the appellee did not suffer double jeopardy and the trial court erroneously granted the writ. The case is reversed with directions to dismiss it.