## Case No. 14,863.

### UNITED STATES v. COOPER.

[12 Int. Rev. Rec. 145.]

Circuit Court, E. D. Tennessee. 1870.

VIOLATION OF INTERNAL REVENUE LAWS—ILLICIT DISTILLING—WHO PUNISHABLE.

[A mere employe working in a distillery, but having no interest therein, or in the whisky produced, as a proprietor or partner, is not subject to indictment, even though he knows the special tax has not been paid; nor is it material that he is to be paid for his labor with whisky produced in the distillery.]

The defendant [Wesley Cooper] was indicted for distilling under the act of July 13, 1866 [14 Stat. 98].

G. Y. Durbeck, witness for the government, testified that he was an assistant assessor of internal revenue in Union county, Tennessee, and as such in August, 1868, was instructed to ascertain who was the party liable to be assessed, and for how much, for carrying on a certain distillery near to the house of Albert Mitchell, and which had been seized by Deputy Collector J. M. Sawyers, about the 1st of March preceding. The assessment had been made against Mitchell; but Mitchell claimed that it was erroneous; that the still, and land on which the distillery was situated, had been sold to defendant, Cooper, who was the party liable to said assessment. Witness went to the house of said Mitchell, who, after learning witness's object, sent for defendant Cooper. Defendant Cooper on his arrival stated and made oath to the fact before witness that at the time of seizing the distillery he, defendant, was carrying it on for himself; that he had before that time bought the distillery and the land it was on (one acre) from said Mitchell, and that Mitchell had nothing to do with the distillery. As near as witness could ascertain, the distillery had been running from about the 1st of December, 1867, to the time it was seized; in all some three months.

J. M. Sawyers, next witness for the government, testified that as deputy collector he seized the distillery spoken of, about the last of February, 1868. That C. M. Baker and another person were with him at the time. That they found the distillery in full blast; that the door was shut, and the defendant alone in the still-house; that witness unfastened the door and went in. The defendant told witness he was running the distillery for himself; that he had bought the land (one acre) and distillery from Albert Mitchell; but that some time after this defendant said he and Mitchell were partners in the distillery at the time.

C. M. Baker, next witness, testified that he was present when Sawyers seized the distillery. Heard defendant say at the time that he was making the run then being made for himself, and also thinks he heard defendant say that at some previous time he had been distilling for Mitchell. Still was running and only defendant was in or near to the distillery.

1. The government introduced no further proof.

Lemuel Linn, witness for the defendant, testified that he was brother-in-law of defendant. That defendant lived with witness at the time he was running the distillery in controversy. That witness knows defendant at first was running the distillery for Albert Mitchell to pay for a hog he had got from Mitchell. That after this defendant worked there, as he and Mitchell said, for a one-fourth gallon of the spirits distilled. Witness had been at distillery often; had helped take corn meal from Mitchell's to the still-house on one occasion about Christmas, and had helped take some whiskey from the distillery to Mitchell's on or about the same time. That he had seen Mitchell at the still-house assisting defendant in doing the work. Witness had heard Mitchell and defendant say, when at the still-house, that defendant was working for Mitchell.

Jacob Koontz, next witness for defendant, testified that defendant had married his mother. That he was at the still-house in question every two or three days, and knows that defendant was only working there for Mitchell. That he had heard both defendant and Mitchell while at the distillery say so. Witness does not know whether defendant was to get a part of the spirits made or not; does not know how he was to be satisfied for his labor; that it was about Christmas, 1867, he heard this conversation from defendant and Mitchell. Witness knows that at first defendant was working there to pay for some pork he had bought from Mitchell. Witness knows that Michell owned the land and distillery, but that Mitchell being a man of property and defendant not, it was a sham arrangement between defendant and Mitchell that if they were caught defendant should claim to be the owner of the still and one acre of land, so that they could not get after Mitchell.

Upon the trial the district attorney objected to the defendant's witnesses giving evidence of any conversation had, or statements made, or claims set up by either defendant or Albert Mitchell, upon the ground that as to the statements of defendant they could not be introduced in his own favor; and as to the statements of Mitchell, he was a competent witness now to be introduced to prove any material facts he may know; besides this, it was an effort to prove an immaterial fact. But the court overruled the objection, and permitted any statements either may have made while at the distillery and in the presence of the other to be given in evidence as part of the res gestæ.

This was all the evidence introduced.

Defendant's counsel insisted in argument that under the proof, Mitchell and not de-

fendant was the man; that Mitchell was the principal in the transaction, and that the defendant was only an employee of Mitchell; that whether defendant was working for wages to be paid in money or in a certain part of the whiskey distilled by him, yet in law Mitchell alone and not defendant can be said to be carrying on the business of a distiller, and Mitchell alone would be criminally liable if such business was carried on without the special tax being paid. Also that though defendant did state that he was the principal in the transaction and was running the distillery at the time it was seized for himself, yet it was evident such statement was false, and made only to shield Mitchell, not knowing that the effect thereof, unexplained, would involve him in criminal liability.

The district attorney in argument stated that though the principle of law contended for by defendant's counsel had been in the abstract heretofore given in charge to juries upon different occasions, yet to him it was not sustained by any principle of law, reason, or good judgment; that he hoped, by a reargument, to show the unsoundness of such a position. The district attorney referred to many authorities to show that in such cases the question of guilt is not affected in the least by the fact whether the defendant was the owner of the land or of the distillery, or whether he was merely doing the manual labor for some other person who did own the land or distillery. In either case, the fact of assisting in carrying on the business being admitted, the defendant would be guilty. To establish a different rule, and the one contended for by defendant's counsel, would practically defeat the revenue law itself. The district attorney next insisted that though the court still adhered to its former holding on this point, yet, 1st, as defendant was found in the act of distilling, the law would presume him to be the proprietor, and it would be for defendant to show affirmatively to the contrary; that to do this he should introduce the best available proof, which in this case would be to introduce Albert Mitchell as a witness, and if defendant fails without sufficient reason to do this and resorts to other evidence less certain and unsatisfactory, the jury are authorized to presume that such witness, Mitchell, would not have testified favorably to the defendant; and any doubt the jury may have on this point from the evidence before them will be resolved against the defendant.

2. The district attorney insisted that if the jury believe defendant merely an employee, yet if defendant had full knowledge of the fact that the distillery was being carried on without the special tax being paid, such guilty knowledge, together with a participation by defendant in the distillery, would make him equally guilty as though he was the proprietor.

3. The district attorney next insisted that notwithstanding the position taken by defendant's counsel be sustained, yet, if defendant's own evidence be true, and the defendant, though he did not own the distillery, did by the terms of his employment become entitled to any certain portion of the product of the distillery—any part of the whiskey made—then his interest in and connection with the distillery was such as to make defendant guilty as a principal in the transaction. The district attorney then presented to the court, as embodying the legal propositions he had made, with a request that they be given to the jury by the court in his charge, the following propositions:

The court is asked by the district attorney to charge—

1. That in cases of this kind, being misdemeanors only, all who aid or assist in the distilling or who have an interest in the distillery or the spirits made at the distillery, are equally guilty if such illicit distilling was done with their knowledge and assent.

2. If the jury shall believe from the proof that, though Mitchell was the owner of the still, furnished the grain that was distilled, and that the distilling was done on Mitchell's land, yet if the defendant was working there and was to receive such a part of the spirits made by him or him and Mitchell jointly, and distilling was done, then the defendant would have such an interest in and connection with the distillery and distilling as would make him guilty in contemplation of law.

3. If the proof shows that the defendant was found in the act of distilling, or by defendant's own admissions it is proven he was the person who was doing the distilling, the law will presume him to have been the party in interest who under the law may be said to be carrying on the business of a distillery, and will be guilty as charged unless he shall rebut that presumption by proving to you satisfactorily that he was not the party who was carrying on the business, and that he had no interest whatever in the distilling that was there being done.

4. This proof being in such case upon defendant to make out, the burden of proof is on him, and he should be required to prove the same by the best evidence he can produce and if the jury have any doubt as to this matter and shall believe the defendant had it in his power either by introducing Mitchell as a witness or by other means to remove such doubt, but fails in doing so, but resorts to evidence less direct and satisfactory, the jury will be authorized to presume that such other and more direct and satisfactory testimony which defendant might have introduced, would not have been favorable for him, and the jury will resolve that doubt against the defendant.

5. If the jury shall believe from the proof that although the defendant was merely employed and was not to receive a part of the spirits made as his compensation or interest in the matter, but to be paid otherwise by Mitchell for his labor, and that Mitchell was the proprietor, yet if the jury shall also believe that the defendant had knowledge at the time

of the fact that the distillery was being run in violation of the revenue law, and was there, knowingly and willingly, assisting in such unlawful distilling, then he would in law be equally guilty with Mitchell, and it will be your duty to return a verdict of guilty in this case.

6. Under the law any person who distils or manufactures spirits or alcohol, by continuous distillation from grain, who brews or makes mash, wort, or wash for distillation or the production of spirits, is deemed a distiller, under the act of July 15, 1866, under which this offence is charged.

7. If the jury shall find the defendant did distil, or did brew, or did make mash, wort, or wash for distillation, or for the production of spirits, he will be guilty as charged, unless the defendant shall have proven to you that the special tax had at the time been paid.

E. C. Camp, U. S. Dist. Atty.
L. C. Honk and L. A. Gratz, for defendant.

BY THE COURT (charging jury). The charge contained in this indictment is very simple. It is, did this defendant carry on the business of a distiller, and, if he did, did he pay the special tax? If not, he would be guilty. But, gentlemen of the jury, who can it be said "carries on the business of a distiller"? Can it be one who is only employed to do the work? Suppose Samuel Pike, who is a large distiller, and has some two hundred hands employed to do the work, should carry on the business without having paid the special tax. Can it be said that those two hundred men would be guilty of a violation of this law? Can it be said that these two hundred men are carrying on the business of distillers? No, gentlemen of the jury, such a proposition is absurd, is perfectly monstrous— the very statement of the case is ridiculous. Why, if a party other than the principal in the transaction is liable to a criminal prosecution because he works in the distillery, then he is also liable to be assessed and made to pay the special tax and other assessments. This the government does not require. They only look to the owner or proprietor for the special tax, and they alone are liable to a criminal prosecution if they fail to pay it. This court has so held the law to be time and time again. It sees no reason to change its views, and never will hold otherwise, unless some decision shall be made which is binding on this court, and which will require this court to change its ruling. This court does not believe any judge ever intended to decide otherwise; and this court will punish as a contempt hereof any counsel who will again argue this proposition with the earnestness and zeal with which it has been argued on the trial of this cause.

The defendant having been found at work in the distillery, he will be presumed to have been the proprietor, unless he shall rebut that presumption by proof. If from the proof the jury believe defendant was merely employed by Mitchell and was distilling for Mitchell, who was the proprietor, and that defendant had no interest in the distillery, or in the whiskey made, as a partner or proprietor, then they cannot find the defendant guilty, even though defendant may have had knowledge at the time that Mitchell had not paid the special tax.

As to the fact that defendant was to receive a part of the whiskey made, the court leaves it to the jury to say whether, by such a contract, the defendant became interested in the matter as a partner, if so, he would be liable, but if the jury shall believe that the one fourth gallon was paid to defendant by Mitchell merely as a compensation for his labor, then defendant would not be guilty, as the fact of being paid in the whiskey he distilled for Mitchell, would not in law make defendant guilty, any more than if Mitchell had paid him in money. If the jury shall find that the defendant was running the distillery for himself, or had an interest therein as partner or proprietor, and not working there as an employee for wages, then defendant will be guilty. and the jury will so find, as there is no claim set up that any special tax had ever been paid.

The court entirely disregarded the instructions asked for by the district attorney, except as the same may have been embraced in the charge above given.

The jury, after being out two days, being unable to agree, were discharged and a mistrial entered.