## BOZZA *v.* UNITED STATES.

No. 190. Argued January 7, 1947.—Decided February 17, 1947.

*Harold Simandl* submitted on brief for petitioner.

*W. Marvin Smith* argued the cause for the United States. With him on the brief were *Acting Solicitor General Washington, Robert S. Erdahl* and *Philip R. Monahan.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The petitioner and one Chirichillo were convicted in a Federal District Court on all counts of a five-count indictment against them which charged violation of the Internal Revenue laws in connection with the operation of a still. The Court of Appeals reversed petitioner's conviction on counts four and five because of insufficient evidence, but affirmed as to counts one, two, and three. 155 F. 2d 592. We granted certiorari. 329 U. S. 698. Count one charged that the defendants had carried on "the business of distiller . . . with intent wilfully to defraud the . . . United States of the tax on . . . spirits so distilled . . . ." in violation of 26 U. S. C. § 2833 (a). Count two charged them with having had possession and custody of the still in violation of 26 U. S. C. § 2810 (a). Count three charged that they had made and fermented mash for the production of alcohol in violation of 26 U. S. C. § 2834. It is argued that the evidence was insufficient to support any of the three counts here at issue. The Government concedes its insufficiency as to counts two and three.

There was testimony to show the following: Chirichillo rented a farmhouse under an assumed name and installed a 300-gallon still with all equipment necessary to ferment mash and distill alcohol. The still was operated day and night. Chirichillo himself mixed the ingredients to make the mash in the attic of the 2½-story frame building, but the alcohol distillation was carried on in another part of the building. Petitioner was at the house two or three times a week. When there he took instructions from

Chirichillo and helped him in the operation of the still; he helped manufacture the alcohol. When Chirichillo carried his products to Newark, the car in which he carried the illicitly distilled alcohol would follow along behind another car—sometimes petitioner's, sometimes another helper's. The farmhouse where the illicit business was carried on appeared from the outside to be deserted; the windows were without shades and the house had been practically stripped of furniture.

We accept the Government's concession that the evidence fails to show that this petitioner had made, or helped to make, the mash as charged in count three. All of the evidence showed that Chirichillo alone handled and mixed the ingredients of the mash, and there is nothing whatever to indicate that the petitioner ever took any part in, or aided and abetted, this particular part of the unlawful process in any manner, or, indeed, that he was ever in or around the attic where the mash was made from ingredients stored there. The Internal Revenue statutes have broken down the various steps and phases of a continuous illicit distilling business and made each of them a separate offense. Thus, these statutes have clearly carved out the conduct of making mash as a separate offense, thereby distinguishing it from the other offenses involving other steps and phases of the distilling business. Consequently, testimony to prove this separate offense of making mash must point directly to conduct within the narrow margins which the statute alone defines. One who neither engages in the conduct specifically prohibited, nor aids and abets it, does not violate the section which prohibits it.

The sufficiency of the evidence as to count two which charged that the petitioner had custody or possession of the still is a closer question. It might be possible that petitioner's helping to make the alcohol aided and abetted in its "custody or possession." But that would be a very strained inference under any circumstances. Here again

the statutes treat custody or possession as a wholly distinct offense. Yet there was no testimony that the petitioner ever exercised, or aided the exercise of, any control over the distillery. His participation in carrying the finished product by car does not fit the category of "custody and possession" so nearly as it resembles the transportation of illegal liquor, 26 U. S. C. § 2803—an offense which the Circuit Court of Appeals has found the evidence insufficient to prove. Nor was there any testimony that the petitioner acted in any other capacity calculated to facilitate the custody or possession, such as, for illustration, service as a caretaker, watchman, lookout, or in some other similar capacity. Under these circumstances, we accept the Government's concession that a judgment of guilty should not have been rendered on the second count.

We think there was adequate evidence to support a finding of guilt on the first count which charged operation of the business of distilling to defraud the Government of taxes. There was certainly ample evidence to show that Chirichillo carried on the business of a distiller and that the petitioner helped him to do it. 18 U. S. C. § 550 provides that one who aids and abets another to commit a crime is guilty as a principal. Consequently, the jury had a right to find, as it did, that the petitioner and Chirichillo were equally guilty of operating the business of the distillery. See *United States* v. *Johnson,* 319 U. S. 503, 515, 518.

But, it is argued, there was no evidence that the petitioner acted with knowledge that the distillery business was carried on with an intent to defraud the Government of its taxes. The same evidence as to knowledge of this guilty purpose, however, that applied to Chirichillo was almost, if not quite, equally persuasive against both defendants. Petitioner assisted in the manufacture of alcohol in Chirichillo's still which was operated under con-

ditions of secretiveness in an apparently abandoned farmhouse. The finished alcohol was carried to Newark in a car which followed another car, sometimes the petitioner's. The members of the jury could properly draw on their own experience and observations that lawful stills, unlike the still in which petitioner worked, usually are not operated clandestinely and do not deliver their products in the fashion employed here. The members of the jury were not precluded from drawing inferences as to fraudulent purposes from these circumstances, nor were they compelled to believe that this petitioner was oblivious of the purposes of what went on around him. Men in the jury box, like men on the street, can conclude that a person who actively helps to operate a secret distillery knows that he is helping to violate Government revenue laws. That is a well known object of an illicit distillery. Doubtless few who ever worked in such a place, or even heard about one, would fail to understand the cry: "The Revenuers are coming!" We hold that the verdict of guilty on the first count must stand.

The only statute for violation of which petitioner's conviction is sustained by us carries a minimum mandatory sentence of fine of one hundred dollars *and* imprisonment, 26 U. S. C. § 2833 (a). In announcing sentence at a morning session, the trial judge mentioned imprisonment only. Thereafter the petitioner was taken briefly to the U. S. Marshal's office and then to a local federal detention jail awaiting transportation to the penitentiary where he was finally to be confined. But about five hours after the sentence was announced, the judge recalled the petitioner and, according to stipulation, stated in the presence of petitioner and his counsel that "in the imposition of sentence this morning . . . it has been called to my attention that there are certain mandatory fines and penalties which I omitted to impose. For the record now minimum mandatory fines and penalties will be imposed." Thus a one

hundred dollar fine was fixed, as required by law, along with the imprisonment sentence. Petitioner charges that this action constituted double jeopardy forbidden by the Federal Constitution.

It is well established that a sentence which does not comply with the letter of the criminal statute which authorizes it is so erroneous that it may be set aside on appeal, *Reynolds* v. *United States,* 98 U. S. 145, 168–169; *Murphy* v. *Massachusetts,* 177 U. S. 155, 157, or in habeas corpus proceedings. *In re Bonner,* 151 U. S. 242. But in those cases it was recognized that an excessive sentence should be corrected, even though the prisoner had already served part of his term, not by absolute discharge of the prisoner, but by an appropriate amendment of the invalid sentence by the court of original jurisdiction, at least during the term of court in which the invalid sentence was imposed.[1] *Cf. De Benque* v. *United States,* 66 App. D. C. 36, 85 F. 2d 202. In the light of these cases, the fact that petitioner has been twice before the judge for sentencing and in a federal place of detention during the five-hour interim cannot be said to constitute double jeopardy as we have heretofore considered it. Petitioner contends, however, that these cases are inapplicable here because correction of this sentence so as to make it lawful increases his punishment. *Cf. United States* v. *Benz,* 282 U. S. 304, 309. If this inadvertent error cannot be corrected in the manner used here by the trial court, no valid and enforceable sentence can be imposed at all. *Cf. Jordan* v. *United States,* 60 F. 2d 4, 6, with *Barrow* v. *United States,* 54 App. D. C. 128, 295 F. 949. This Court has rejected the "doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence." *In re Bonner, supra* at 260. The Constitution does not require that sentencing should be a game

---

[1] Compare Rule 45c, Federal Rules of Criminal Procedure.

in which a wrong move by the judge means immunity for the prisoner. See *King* v. *United States,* 69 App. D. C. 10, 15, 98 F. 2d 291, 296. In this case the court "only set aside what it had no authority to do and substitute[d] directions required by the law to be done upon the conviction of the offender." *In re Bonner, supra* at 260. It did not twice put petitioner in jeopardy for the same offense.[2] The sentence, as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.

Other contentions here do not merit our discussion. The judgment as to count one is affirmed. The judgment is reversed as to counts two and three.

*It is so ordered.*

MR. JUSTICE DOUGLAS, MR. JUSTICE MURPHY, and MR. JUSTICE RUTLEDGE dissenting as to the affirmance of the judgment on count one.

We are of the view that to convict one as an aider and abetter in engaging in or carrying on a distillery business with intent "to defraud" the United States of the tax on the distilled spirits, 53 Stat. 319, 26 U. S. C. § 2833 (a), evidence is necessary which shows that by some act of concealment he promoted the fraud, or by counsel and advice furthered the unlawful scheme, or in fact had

---

[2] In *Ex parte Lange,* 18 Wall. 163, relied on by petitioner here, the defendant had been sentenced to fine *and* imprisonment for violation of a statute which authorized a sentence only of fine *or* imprisonment. Since he had paid his fine and therefore suffered punishment under a valid sentence, it was held that his sentence had been "executed by full satisfaction of one of the alternative penalties of the law . . . ." *Murphy* v. *Massachusetts, supra* at 160. Therefore, Lange's plea, that the trial court could not correct the sentence without causing him to suffer double punishment, was sustained. *Cf. In re Bradley,* 318 U. S. 50. But here the petitioner had not suffered any lawful punishment until the court had announced the full mandatory sentence of imprisonment *and* fine.

some interest in the project.[1]   See *United States* v. *Cooper,* 25 Fed. Cas. 627, 629; *United States* v. *Logan,* 26 Fed. Cas. 990, 992; *Seiden* v. *United States,* 16 F. 2d 197, 199; *Part-son* v. *United States,* 20 F. 2d 127, 129; *Anderson* v. *United States,* 30 F. 2d 485, 487.   Aiding and abetting in the illicit manufacture of liquor is one thing.[2]   Aiding and abetting in carrying on the business with intent to defraud the United States of a tax is quite a different matter, and requires a different test, if the two offenses are not to be blended.   The evidence in the case and the instructions given the jury [3] seem to us inadequate to sustain a con-

---

[1] Judge Learned Hand, after reviewing the various definitions of aiding and abetting, said: "It will be observed that all these definitions have nothing whatever to do with the probability that the forbidden result would follow upon the accessory's conduct; and that they all demand that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.   All the words used—even the most colorless, 'abet'—carry an implication of purposive attitude towards it."   *United States* v. *Peoni,* 100 F. 2d 401, 402.

[2] Thus § 2833 (a) makes it an offense to "carry on the business of a distiller without having given bond as required by law."   Section 2834 makes it unlawful to make or ferment mash, fit for distillation, in any building or on any premises other than an authorized distillery.

[3] ". . . if you find that he was merely an underling, serving at the beck and call of an employer and nothing more than [sic] that would not justify your finding him to be engaged in the business of a distiller. But if from the evidence you conclude logically that he aided and abetted in the carrying on of this business, then he would be chargeable as a principal. . . .   Aiding and abetting is something more than merely committing an act which may have the effect of assisting or furthering a criminal transaction.   Before a defendant can be held as an aider and abetter the government must prove beyond a reasonable doubt that he committed an act which furthered or assisted the criminal transaction, and at the time he committed the act he knew that a crime was in process of commission, and with that knowledge he acted with intent to aid and abet in the criminal transaction."   While the above charges were requested by defendant, we nevertheless feel that the failure of the instructions to satisfy the standard we suggest is an error which we should notice.   *Sibbach* v. *Wilson & Co.,* 312 U. S. 1, 16.

viction under count one, charging Bozza with aiding and abetting in a tax fraud scheme.

In view of this conclusion, MR. JUSTICE RUTLEDGE reserves expression of opinion concerning the legality of the sentence.