L. C. PERRY, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 15576.

United States Court of Appeals Fifth Circuit.

Nov. 15, 1955.

**130**

Jas. W. Arnold, Athens, Ga., for appellant.

James W. Dorsey, U. S. Atty., John W. Stokes, Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

BROWN, Circuit Judge.

Conceding his guilt on the count for the misdemeanor offense of working in an illicit distillery, 26 U.S.C. § 2831, Appellant levels his attack on the sufficiency of the evidence to sustain the finding of guilt, and the sentence, on the felony count of making, aiding and abetting in the making and fermenting of mash under 26 U.S.C. § 2834. He in-

sists further that if we reject this basic attack, this conviction cannot stand since two offenses are created from a single act, and the trial court erred in failing properly to charge on the use of circumstantial evidence on the mash count.[1]

As his rod and staff, Appellant leans heavily on Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818, to extricate himself from the predicament of freely acknowledging guilt and activity as one working in an illicit distillery, and on it, he nonetheless insists that while making mash is an essential and common phase of such illicit operations, it is in fact and law something so different and so special that the one does not embrace the other. The initial impression is that this case comes close to matching this rubric,[2] but a closer analysis of the evidence leads us to the clear conclusion that there was sufficient evidence to enable the jury to find that Appellant did in fact perform essential work in connection with the mash.

This distillery was located in a secluded spot and had been under surveillance at least a few minutes before the raid. During that time Appellant, and one other never identified as he successfully escaped, was observed in the distillery yard. He was first seen going across a small stream between the boiler and the place where the liquor was stored in barrels, he then came back where he was occupied near the boiler. Actually, the only specific act described by the raiding officers was the monologue he was having

---

1. The sentence was for two years and a fine of $500.00. § 2831 carries a maximum fine of $1,000.00 and imprisonment not exceeding six months; § 2834 carries a minimum-maximum fine of $500.00 to $5,000.00 and imprisonment not less than six months or more than two years.

 Appellant was tried but acquitted by the jury of the felony counts for possession and control of an illicit still, 26 U. S.C. § 2810; possession of distilled, untaxed spirits, 26 U.S.C. § 2803; and carrying on the business of an illicit distiller, 26 U.S.C. § 2833.

2. Bozza v. United States, supra, 330 U.S. at page 163, 67 S.Ct. at page 647. " * * * The Internal Revenue statutes

 have broken down the various steps and phases of a continuous illicit distilling business and made each of them a separate offense. Thus, these statutes have clearly carved out the conduct of making mash as a separate offense, thereby distinguishing it from the other offenses involving other steps and phases of the distilling business. Consequently, testimony to prove this separate offense of making mash must point directly to conduct within the narrow margins which the statute alone defines. One who neither engages in the conduct specifically prohibited, nor aids and abets it, does not violate the section which prohibits it. * * *"

with the ubiquitous distillery dog on how lazy the dog was. This tender scene was interrupted by the raid and Appellant's hasty, unsuccessful flight. On apprehension he had none of the common explanations of innocence.[3]

This was the sum of the Government's case, but sketchy as it was Appellant was apparently unwilling, even though the case was chiefly presence at an illicit distillery and flight therefrom, to risk the decision whether such evidence, absent some credible explanation, was sufficient to make out a case on one or more, or all of the counts charged. See Vick v. United States, 5 Cir., 216 F.2d 228; Girgenti v. United States, 3 Cir., 81 F.2d 741; United States v. Mann, 7 Cir., 108 F.2d 354; and Cf. Icenhour v. United States, 5 Cir., 187 F.2d 663; Barton v. United States, 4 Cir., 267 F. 174; Knight v. United States, 5 Cir., 213 F.2d 699. Facing this uncertainty, he chose to take the stand in his own defense, and it was on his own evidence, we hold that, eliminating any problem which the trial court or we on appeal might have had on the legal sufficiency without it, his words sealed his fate in fact.

Appellant freely acknowledged that he had been working at the still for about a week. The entire apparatus was located in a single, relatively small area with no apparent physical separation of the various production stages. His method of compensation hardly put him in the class of an ordinary laborer since he was to be paid at the rate of 15¢ per gallon of whiskey produced. His principal work was to fire the boiler of this 500-gallon still, to pump the "beer" from the fermenting barrels into the pre-heater, operate the pre-heater, and discharge the liquid from the still after the alcohol was distilled off.

His crucial testimony, on this point, was that "beer" is also called mash, so that while pumping beer he must have been pumping mash[4] and, more important, it was his decision primarily to determine whether a given barrel of mash (it was undisputed that there were 30 wooden barrel fermenters 200-gallon capacity) was sufficiently ready to run into the pre-heater, thence into the still.[5]

While Bozza declares a Congressional purpose to treat the business of making and fermenting mash as a distinctly separate offense, neither the truncated scheme of the Internal Revenue statute nor this decision forces a court to allow the defendant to determine whether his

---

3. His resignation to this likely peril of the trade and his studied calculation of its risks is reflected by this undisputed testimony from one of the officers:
 " * * * I heard him [Perry] make the statement that it was impossible for him to make whiskey in Dawson County without being caught, and he also said that he had heard that we had caught two men on May 4 a short distance from the distillery site where he had been arrested on this date, and after that he felt pretty safe * * *"

4. "Q. * * * Now, * * * beer is the same as mash, isn't it? A. Yes, sir, that's what it's called.
 "Q. What it's commonly called is called beer? A. Yes, sir."

5. "Q. * * * after this mash was made up * * * how did you both work together to decide when to put it in, which one went into the still next?
 * * *

"A. Well, when I'd pump the beer up, I'd pump the beer up that was ready to run.
* * *
"Q. How much, how many of them could you put in the still at one time? A. Just one barrel.
* * *
"Q. Well, how did you keep track of which one was ready next, by smelling it or testing it some way? A. You can tell by the looks of it.
* * *
"Q. All right, and you and the other men * * * who were there, operated in that way, that is, you decided he would make up the mash and you would decide when it was ready to pump up there, and then you and he ran that mash at such a time and in such a way to get the most liquor out of it you could, didn't you? A. Well, I just pumped the beer up there, what I thought was ready."

acts will be a misdemeanor or a felony by the job description or label which he may give to his activities on the premises. Making and fermenting mash, as any other occupation, whether licit or illicit, inevitably involves factual matters by which to determine whether, in fact, the given activity is within the particular category involved or is in fact something quite distinct and different.

■ We hold that on this record, and on Appellant's own testimony, he established without doubt that one of his principal and important activities was to pump the beer into the still and that involved as an indispensable, preliminary step the exercise of critical judgment as to whether or not the mash had sufficiently fermented for efficient distillation. Since the use of the mash and the process of fermentation has as its sole object the production of an essential ingredient to the final distilled liquor, and the quality of the end product is, on his own testimony, based to a large extent upon the quality of the judgment exercised, this decision—when to run it—was the very heart of the process of fermentation. *When* a process is completed is obviously an important phase of the process of making or producing. There is nothing in this statute which reflects a Congressional purpose to limit the proscribed acts to those involving manual activity. Those who think and supervise and determine the extent to which production under way is finished are truly engaged in the "making" of such product.

■ Arriving at this conclusion that on this record from his own testimony he was engaged in "making and fermenting" mash the contention that the court erred in not expressly charging the jury on circumstantial evidence concerning the mash count is quickly disposed of. Assuming that an adequate presentation of the point was made, there was no need for such an instruction. This is so both under Holland v. United States, 348 U.S. 121, 139, 75

S.Ct. 127, and the nature of this record. In no sense was the proof, as finally made, on this count wholly based upon circumstance. On the contrary, we have held that it was the Appellant's own testimony which, regardless of the prior state of the record, made out a jury issue on this point. This was direct evidence which the Appellant himself intended the jury to believe. His difference relates not to its character as direct or circumstantial evidence, or its credibility, but to his insistence that it does not meet the needs of Bozza on the making of mash. Merely because we reject this argument does not turn this direct evidence into circumstantial.

■■ Nor is there any basis for the final contention that for a single act he has been improperly convicted of two offenses. Where the same transaction violates two distinct statutory provisions, the question of whether two offenses have been committed is based on whether each offense requires proof of a fact which the other does not. Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153; Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505. Here, the count for working in a distillery, 26 U.S.C. § 2831, required proof that there was no sign on the premises indicating this to be a registered distillery, while the count for making mash, 26 U.S.C. § 2834, required no such proof. Conversely, the mash count required proof of fermenting mash, while the count for working in a distillery required no proof of mash. This was not, then, an effort to make two wrongs from a single act. Fleisher v. United States, 6 Cir., 91 F.2d 404, reversed on other grounds 302 U.S. 218, 58 S.Ct. 148, 82 L.Ed. 208. Appellant was charged with having done two different things and was found guilty on sufficient evidence of both.

The judgment is

Affirmed.