THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* IRMA GONZÁLEZ DE DEMORA, Defendant and Appellant.

No. CR-64-273. Decided March 23, 1965.

---

*Wilson F. Colberg* and *Juan Enrique Colón* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM: A jury found appellant guilty of involuntary manslaughter committed while driving a motor vehicle. The facts occurred on September 14, 1963 in Las Rosas Avenue in Los Angeles Development in the jurisdiction of Carolina, Puerto Rico. On appeal she assigns three errors, which we discuss below:

(1) The Superior Court erred in failing to grant a motion for a new trial requested on grounds (a) and (b)-4 of Rule 188 of Rules of Criminal Procedure. The motion for a new trial was grounded on allegedly newly discovered evidence and the prosecuting attorney's improper conduct. In support of the first ground she attached the sworn statement of a witness, which statement appears in the record, and which would corroborate the defense evidence and challenge the evidence for the prosecution. Five witnesses for the prosecution and six witnesses for the defense testified at the trial. In her memorandum in support of the motion for new trial defendant explained that she could not get that witness on time for the trial in spite of the fact that she looked for her at her home, in Club 22 in Santurce, and in Castle Club also in Santurce, because said witness was in New York. The motion for a new trial having been argued by the parties, it was denied by the Superior Court. In her brief

appellant acknowledges that "Although it is true that the testimony of Mrs. Lanauze [the new witness] would challenge the evidence adduced by the People of Puerto Rico at the trial, and according to *People* v. *Beltrán*, 73 P.R.R. 466 (1952), it would possibly not constitute basis to grant the motion for a new trial, it is also true that it could not be discovered with reasonable diligence prior to the trial that the presentation of said evidence would be feasible, since counsel for the defense assumed for a fact that it was impossible to find Mrs. Lanauze and, undoubtedly, the presentation of her testimony would have produced a different result, which by itself would have justified granting a new trial."

■ The alleged new exidence being cumulative for the defense and meant to impeach the testimony adduced by the state at the trial, the trial court did not err in denying the motion for a new trial. *People* v. *Morales*, 66 P.R.R. 9, 19 (1946) and cases cited therein; *People* v. *Beltrán*, 73 P.R.R. 466, 476 (1952). We have repeatedly held that a motion for a new trial founded on newly discovered evidence is addressed to the sound discretion of the court. *People* v. *Aponte*, 77 P.R.R. 870, 874 (1954); *People* v. *Pardo Toro*, 90 P.R.R. 618 (1964).

■ As to the second ground of the motion for new trial appellant adduces that when the prosecuting attorney was delivering his arguments he made reference to the presence therein of a bald man from Río Piedras who, he said, was a professional jury-fixer. On this particular, the record only contains the following:

"DEFENSE: Before the jury returns we want to raise a question for the record. We want it to appear in the record that in the closing argument of my colleage the prosecuting attorney, a reference was made to a bald man from Río Piedras in the room as having conferred, or being about to confer or speak, or whatever it may be, with the members of the jury who were

in the courtroom. Specifically we want it to appear in the record. We did object and it was at this moment when the prosecuting attorney made the imputation, because we did not want to confuse the mind of the jury with a question which would give rise to misinterpretation, but we want it to appear in the record that it is an inference that has nothing to do with the case and which could be prejudicial.

JUDGE: What is the contention; what is the colleague requesting?

DEFENSE: To have it entered in the record.

JUDGE: All right. The stenographer has taken note and it will appear in the record. What is the request?

DEFENSE: That is all.

JUDGE: Then there is nothing to decide.

DEFENSE: It is a contention.

JUDGE: Let it be entered in the record that the prosecuting attorney had made said remarks and that the defense understands that said remarks, although not objected to by the defense, were irrelevant and may influence the mind of the jury against defendant.

DEFENSE: Exactly.

JUDGE: There is nothing to decide. There is no motion for mistrial, or dissolution of the jury, or any motion whatsoever." Tr. Ev. 241–242.

As it may be seen said incident is no more than a vague contention set forth by the defense, which also acknowledged not having timely objected to the prosecuting attorney's remarks, nor having recorded them. Nor does it appear from the untimely objection of the defense that the prosecuting attorney had implied any specific interest on the part of defendant in the steps taken by the aforesaid bald man. Reference to the words "professional jury-fixer" is made for the first time in appellant's brief on appeal and they were neither entered in the record nor formally contended at the trial. As may be seen from the foregoing no motion was presented and the judge had nothing to decide. We have read the entire transcript of the evidence consisting of 270

pages. We do not believe that said words spoken by the prosecuting attorney in his arguments were decisive or substantially prejudicial to appellant, as required by Rule 188(d).

■■ (2) The second error alleges that the trial court erroneously instructed the jury by adding to the theory of the People an essential element which was not a part of said theory. In stating his theory the prosecuting attorney, in part, said: "That according to the evidence which we propose to offer, that is a place where there are always many children; that she was driving at a speed beyond what prudence and good judgment, circumspection, recommended, and in violation of the traffic laws then in force." Tr. Ev. 6. At the close of the trial, when the judge was summarizing the prosecuting attorney's theory, when he came to the above citation, he said: "that said place was generally frequented by many children in that area and that defendant had knowledge of the situation. . . ." Tr. Ev. 246. It is true that the prosecuting attorney, as may be seen, did not say exactly those words, but the jury had knowledge that the judge was not reading or citing verbatim the prosecuting attorney's remark, but he was summarizing it. Because they believed that the evidence presented could be "easily remembered by the gentlemen of the jury" the defense and the prosecuting attorney stipulated that the judge need not summarize the evidence offered, unless one of the jurors should request the reading of a testimony. Tr. Ev. 247. Furthermore, the judge explained to the jury that "the arguments do not constitute evidence, it is merely the manner in which the attorneys, the prosecuting attorney representing the state and colleague Colberg representing the defendant, construe and analyze the evidence introduced; but I repeat that they constitute no evidence in any manner whatsoever and it devolves upon you to decide really and effectively whether the evidence introduced by the prosecuting attorney is suffi-

cient, and ultimately you will decide whether or not the defendant is guilty of the offense charged." Tr. Ev. 243. The defense did not raise any objection at the proper time thus waiving her right to allege on appeal erroneous instructions. *People* v. *Martínez Santiago,* 91 P.R.R. 853 (1965); *People* v. *Del Valle,* 91 P.R.R. 167 (1964); *People* v. *Pinto Medina,* 90 P.R.R. 570 (1964); *People* v. *Rodríguez Correa,* 88 P.R.R. 635 (1963). The parties did not request special instructions (Tr. Ev. 258) and the defense did not take any exception to the instructions of the court when asked by the judge. Tr. Ev. 267. Taking the instructions as a whole and in the light of the entire evidence introduced, it cannot be said that the words of the judge substantially prejudiced appellant.

■ ■ (3) The third error adduces that the day after the court rendered judgment it corrected. the same adding the revocation of the driving license for a period of two years, the court considering it mandatory by law. Appellant argues that although § 204 of the Penal Code, 33 L.P.R.A. § 636, establishes that: "In case of conviction for involuntary homicide committed by a person when driving a motor vehicle by means of the operation thereof, the trial court shall, in addition, revoke the convict's license to drive motor vehicles for a term of not less than one year," nevertheless said provision was repealed by Act No. 175 of May 4, 1949. This Act provided that the court taking cognizance of the case may decree the permanent or temporary cancellation of the license to drive motor vehicles of any person who is convicted of violating § 328 of the Penal Code of Puerto Rico, or of involuntary homicide, when the death charged to the defendant in such cases has been caused by a motor vehicle, *as these are defined under letter (b) of Section 2 of Act No. 279 approved April 5, 1946,* Automobile and Traffic Act. But that Act No. 279 of April 5, 1946 was expressly repealed by the existing Vehicle and Traffic Law, Act No. 141 of

July 20, 1960 and said Act in force contains a definition of "motor vehicle" which is substantially like the definition of that term contained in the repealed Act No. 279 of 1946. Therefore, it must be understood that in referring to a "motor vehicle" Act No. 175 of May 4, 1949, invoked by appellant, the intent of the law is that that term refers to motor vehicles according to the definition in the law. Anyway, if the revocation of the license was mandatory the judge had to so order[1] and if on the contrary, it was at the option of the court, as alleged by appellant, the judge, in the exercise of his discretion, ordered the revocation of the license. In so doing he did not abuse his discretion and there is no ground for reversal.

■ ■ As we have seen the errors assigned were not committed, and after carefully reading the entire transcript of the evidence we hold that the evidence believed by the jury justifies appellant's conviction. The penalty provided by the Penal Code, § 204, in cases of involuntary manslaughter committed by a person when driving a motor vehicle shall be confinement in jail for not less than six months nor more than five years, and the revocation of the license for a term of not less than one year. 33 L.P.R.A. § 636. In this case the court ordered appellant to serve eight months in jail and revoked or suspended her license for a term of two years. This Court, in the exercise of its discretion, will modify that sentence reducing the penalty to six months in jail, but it will not alter the sentence as to the revocation of the license. As thus modified, the judgment appealed from will be affirmed.

[1] As it is known, erroneous sentences may be corrected, *González de Jesús* v. *Delgado, Warden*, 90 P.R.R. 30 (1964); *People* v. *Lozano Díaz*, 88 P.R.R. 817 (1963); *Bozza* v. *United States*, 330 U.S. 160, 167 (1946); *Reyes* v. *United States*, 262 F.2d 801 (1959).