UNITED STATES of America,
Plaintiff-Appellee,

v.

John STANFORD, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Joe Louis BECTON, Defendant-
Appellant.

Nos. 72–1758, 72–1759.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 8, 1973.

Decided March 30, 1973.

Robert W. Andrews (Court appointed), Memphis, Tenn., on brief, for appellant Stanford.

J. Harold Ellis (Court appointed), Memphis, Tenn., on brief, for appellant Becton.

Johnnie L. Johnson, Jr., Asst. U. S. Atty., Memphis, Tenn., for appellee; Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief.

Before PHILLIPS, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

PER CURIAM.

Appellants were convicted on all counts of a four-count indictment: Count 1 charged them with possession and control of unregistered distilling apparatus in violation of 26 U.S.C. § 5601(a)(1)[1]; Count 2 charged willful and unlawful making of fermented mash, in violation of 26 U.S.C.A. § 5601(a)(7)[2]; Count 3, the unlawful production of spiritous liquors in violation of 26 U.S.C. § 5681(c)[3]; and Count 4, the unlawful possession of property intended for use in the production of spiritous liquors, in violation of 26 U.S.C. § 5686(a)[4]. The two appeals were separately filed and briefed but were argued together and have been consolidated in this opinion.

On February 18, 1971, Police Detective Childers received information from an informant that a whiskey still was being operated in the north section of Memphis, Tennessee. Accompanying the informant to the still site, Detective Childers found that the still was located in an open field which was filled with junk cars, garbage and trash. The cooker, covered with garbage and debris, was concealed in a hole in which a fire had been burning. Concealed beneath the trash and garbage was a cave about three feet high and four feet wide. Inside the cave was a large pot made of two 55-gallon drums welded together, eight barrels, some plywood, a tarpaulin and some boxes. No signs were posted around the area designating it as a distillery that was registered with the United States Treasury Department. It was estimated that the still had been in operation for approximately two months.

Having located the still, a surveillance of the still site was begun on February 18, 1971. On the evening of February 23 it was determined that the still was in operation and the officers took their various positions in connection with the surveillance. Some of them remained

1. Section 5601(a)(1) provides that any person who "has in his possession or custody, or under his control, any still or distilling apparatus set up which is not registered, as required by section 5179(a)  .   .   .   shall be fined not more than $10,000, or imprisoned not more than 5 years, or both.  .   .   ."

2. Section 5601(a)(7) provides that any person who "except as otherwise provided in this chapter, makes or ferments mash, wort, or wash, fit for distillation or for the production of distilled spirits, in any building or on any premises other than the designated premises of a distilled spirits plant lawfully qualified to produce distilled spirits, or removes, without authorization by the Secretary or his delegate, any mash, wort, or wash, so made or fermented, from the designated premises of such lawfully qualified plant before being distilled  .   .   .   shall be fined not more than $10,000, or imprisoned not more than 5 years, or both.  .   .   ."

3. Section 5681(c) provides that "[e]very person who works in any distillery, or in

any rectifying, distilled spirits bottling, or wholesale liquor establishment, on which no sign required by section 5115(a) or section 5180(a) is placed or kept, and every person who knowingly receives at, or carries or conveys any distilled spirits to or from any such distillery, or to or from any such rectifying, distilled spirits bottling, or wholesale liquor establishment, or who knowingly carries or delivers any grain, molasses, or other raw material to any distillery on which said sign is not placed and kept, shall forfeit all vehicles, aircraft, or vessels used in carrying or conveying such property and shall be fined not more than $1,000, or imprisoned not more than 1 year, or both."

4. Section 5686(a) provides that "[i]t shall be unlawful to have or possess any liquor or property intended for use in violating any provision of this chapter or regulations issued pursuant thereto, or which has been so used, and every person so having or possessing or using such liquor or property, shall be fined not more than $5,000, or imprisoned not more than 1 year, or both."

in automobiles on Levee Road, which ran alongside the dump, and two agents concealed themselves in the dump about 25 yards from the still. At approximately 7:00 or 7:30 p. m. Appellants Stanford and Becton were seen walking eastwardly on Levee Road. They left the road and walked through the dump, stopping approximately 60 yards from the position of the two agents and approximately 85 yards from the still. They crouched down, got up, walked back onto Levee Road and began walking along the road. The agent in charge of the operation ordered by radio the other officers in the vicinity to stop them and the officers stationed in automobiles stopped and arrested Appellants. The officers testified that both smelled of wood-smoke, Stanford's right pant leg was wet from the knee down and he had mash residue on his trousers, and both had mud on their shoes. Becton made a statement to the effect that he had been arrested for liquor violations before "but not for a little toy like that little thing down there."

After the arrest, the still was observed by the agents and found to be in operation. A plaster cast of a footprint located about twenty paces from the still site was found to match Stanford's boot. Also, soil samples taken from the area around the still site were found to match soil taken from both Appellants' boots.

Stanford's motion to suppress, based on a lack of probable cause for his arrest, was denied by the District Court.

Appellants attack the validity of their arrests and the seizure of their clothing and contend that the District Court improperly denied their motions of acquittal because the evidence was insufficient to sustain their conviction. Because we find that the evidence was insufficient to sustain the convictions we find it unnecessary to consider the validity of the arrests.

■ In considering whether the evidence is insufficient to support a judgment of conviction, an appellate court will reverse the judgment only if it is not supported by substantial and competent evidence. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), rehearing denied, 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222. "In making such a determination the Court must take that view of the evidence with inferences reasonably and justifiably to be drawn therefrom most favorable to the Government, without weighing the evidence or determining the credibility of the witnesses." United States v. Conti, 339 F.2d 10, 13 (6th Cir. 1964).

■ Having carefully reviewed the evidence in the light most favorable to the Government,[5] we do not find that

5. The United States, in its brief, has summarized the evidence in the following manner:

"The record shows that Detective Childers received information on February 18, 1971, that a whiskey still was being operated east of Thomas Street, north of Levee Road, on the south side of the Wolf River, in Memphis, Tennessee. A surveillance was set up on that date at the still site at 7:00 p. m. on February 23, 1971. The defendant and Joe Louis Becton were seen approaching the still site from Levee Road. The defendant and Joe Louis Becton dropped down in the tall grass upon noticing that the whiskey still was under surveillance.

"The Defendant and Joe Louis Becton were fifty yards from the point where Special Agents Robert W. St. John and Jerry W. Robinson were posi-

tioned near the whiskey still. The Defendant and Joe Louis Becton then changed their direction and headed south toward Levee Road where they were arrested.

"Detective Childers testified that as he approached the Defendant John Stanford he noticed his right pants leg was wet from the knee down and he smelled the unmistakable odor of wood smoke on the Defendant John Stanford and Joe Louis Becton. He further testified that he saw mash on the front of John Stanford's clothing.

"The whiskey still was observed that night and was found to be in operation and a fire was underneath the still cooking pot. There was a washtub with several gallons of whiskey in it. The smoke pipe that had been placed inside the cave was taken out and it was in the outside of the cave and smoke

it is sufficient to sustain Appellants' convictions. Neither Appellant was seen closer than 75 to 85 yards from the still. Neither had been seen in the area during the five previous days of surveillance. While evidence of footprints and soil samples was introduced, there was no evidence from which could be inferred Appellants' presence at the still during its operation. Presence at the still site, without more, is not sufficient to support a conviction for illegal possession and control of distilling apparatus. United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947). In both *Romano* and *Bozza* the defendant was seen at the site of the still, inside a private building. Here, Appellants were seen in a field used as a public dump, some 85 yards away from the still. The statutes relating to the operation of an illegal still require proof of the specific offense charged. As the Supreme Court said in Bozza v. United States, *supra*:

> "The Internal Revenue statutes have broken down the various steps and phases of a continuous illicit distilling business and made each of them a separate offense. Thus, these statutes have clearly carved out the conduct of making mash as a separate offense, thereby distinguishing it from the other offenses involving other steps and phases of the distilling business. Consequently, testimony to prove this separate offense of making mash must point directly to conduct within the narrow margins which the

statute alone defines. One who neither engages in the conduct specifically prohibited, nor aids and abets it, does not violate the section which prohibits it." 330 U.S. at 163, 67 S.Ct. at 647.

Appellants were charged with the specific acts of possession, making and fermenting of mash, and working in an illegal distillery. The evidence does not sustain the commission of any of these specific offenses by the Appellants. The Government failed to show that Appellants committed an act specifically proscribed by the statutes under which they were charged. Their convictions must be reversed. Accordingly, the judgment of the District Court denying Appellants' motions for acquittal is reversed.

---

was protruding out of the stack. The tops had been taken off the barrels and they were open. There was a drip bucket underneath the thumper coil and the drip bucket was almost full of whiskey.

"A plaster of paris cast was taken of the footprints of the Defendant John Stanford twenty paces from the whiskey still.

"The soil sample taken from the boots of the Defendant John Stanford was the same that was found in the bootprints

of the Defendant John Stanford twenty paces from the still site. The soil removed from Defendant John Stanford's pants leg was the same soil that was taken from his bootprint at the still site. The soil taken from inside the cave was the same soil that was taken from John Stanford's boots.

"The defendant's pants contained mash residue.

"The soil removed from the shoes of Joe Louis Becton was the same soil as that from the cooker inside the cave."