substantial passage of time has created settled expectations as to the finality of the sentence imposed. *See, e.g.*, *DeWitt v. Ventetoulo*, 6 F.3d 32, 35-36 (1st Cir. 1993) (habeas relief ordered where state sought to reinstate sentence after DeWitt had been released from prison); *United States v. Lundien*, 769 F.2d 981, 987 (4th Cir. 1985) (rejecting due process claim but noting that "due process may also be denied when a sentence is enhanced after the defendant has served so much of his sentence that his expectations as to its finality have crystallized and it would be fundamentally unfair to defeat them"). Under AEDPA these cases have no bearing on our disposition of Onifer's claim as our inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time Onifer's conviction became final. As noted above, cases such as *Benz* and *Bozza* do not discuss due process, nor do they mention the possibility, later developed in our sister circuits, that a prisoner's expectation in the finality of his or her sentence may crystalize into a due process right not to have that sentence adjusted upwards, even in order to correct legal errors in sentencing. Thus, the Michigan state courts did not rule unreasonably when they rejected Onifer's due process claim.

## V.

The decision of the Michigan courts to reject Onifer's constitutional claims was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court. For this reason we **reverse** the district court's grant of habeas relief.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0203P (6th Cir.)
File Name: 01a0203p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GEORGE F. ONIFER,
        *Petitioner-Appellee,*

        *v.*                                    No. 00-1043

ZBIGNIEW TYSZKIEWICZ,
Warden,
        *Respondent-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 96-10348—Victoria A. Roberts, District Judge.

Argued: March 16, 2001

Decided and Filed: June 22, 2001

Before: KEITH, NORRIS, and DAUGHTREY, Circuit
Judges.

_____

### COUNSEL

**ARGUED:** Brad H. Beaver, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellant. Melvin Houston, Detroit, Michigan, for Appellee. **ON BRIEF:** Brad H. Beaver, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS

DIVISION, Lansing, Michigan, for Appellant. Melvin Houston, Detroit, Michigan, for Appellee.

——————————

**OPINION**

——————————

ALAN E. NORRIS, Circuit Judge. Zbigniew Tyszkiewicz, warden of the Michigan prison where petitioner is presently incarcerated, appeals from the district court's decision to grant habeas relief to petitioner George Onifer. For the reasons that follow we now **reverse**.

**I.**

On May 8, 1968, Onifer was convicted of the kidnapping and rape of a fifteen-year old schoolgirl and sentenced to two concurrent terms of 25 to 50 years' imprisonment. On August 1, 1972, following Onifer's apparent rehabilitation in prison and with the support of the parole board, the Macomb County prosecutor's office brought a motion before the trial court to resentence Onifer. Acting upon the prosecutor's motion, the trial court reduced Onifer's sentence to a minimum term of five years, which immediately made him eligible for parole. He was paroled in September 1972, and successfully completed his two-year term of parole on September 20, 1974.

Onifer's rehabilitation was, however, not long-lived. On March 18, 1975, he abducted, raped, and killed an eleven-year old girl as she was walking to school. Immediately following this attack, Michigan's attorney general filed a motion to set aside Onifer's reduced sentence and reimpose the original minimum term of 25 years' imprisonment. The motion was dismissed as untimely by the Macomb County Circuit Court. The attorney general appealed to the Michigan Court of Appeals seeking an order of superintending control to direct the lower court to declare the resentencing a nullity and to reinstate the original term.

in addition to the already imposed prison term. *Bozza*, 330 U.S. at 165-66. The Supreme Court rejected Bozza's argument that the trial court's decision to increase a sentence that was mistakenly lenient violated the double jeopardy clause:

> If this inadvertent error cannot be corrected in the manner used here by the trial court, no valid and enforceable sentence can be imposed at all. This Court has rejected the "doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether because the court committed an error in passing the sentence." The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case the court "only set aside what it had no authority to do, and substitute(d) directions required by the law to be done upon the conviction of the offender." It did not twice put petitioner in jeopardy for the same offense. The sentence as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.

*Bozza*, 330 U.S. at 166-67 (internal citations and footnote omitted); *see also North Carolina v. Pearce*, 395 U.S. 711 (1969) (holding that the double jeopardy clause is not violated when a defendant has his original conviction set aside, but then has a more severe sentence imposed upon reconviction), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989); *United States v. Benz*, 282 U.S. 304, 307 (1931) (holding that a district court may, during the session in which a sentence is entered, amend a sentence downwards).

None of these decisions were based upon due process; instead they relied solely on the double jeopardy clause. In reaching its decision to grant the writ on the basis of due process, the district court mistakenly looked to a series of recent circuit court decisions that have held that an individual's due process rights are implicated when the state attempts to revise an individual's sentence upwards after a

by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## IV.

Before the district court, Onifer claimed that the Macomb County Circuit Court's decision to reimpose his original term following his release from parole violated due process and the double jeopardy clause. The district court rejected Onifer's double jeopardy claim, a decision that Onifer does not contest upon appeal, but granted his petition for a writ of habeas corpus on the ground that reinstatement of his original sentence after he had been released and completed parole violated due process. We believe this determination to have been in error and now reverse.

Under AEDPA our review is limited to determining whether the state court decision was contrary to, or an unreasonable application of, Supreme Court precedent that was clearly established at "the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Here Onifer's original sentence was reinstated on December 27, 1976, while his delayed motion for leave to appeal was denied by the Michigan Supreme Court in 1979. Our examination of the relevant Supreme Court precedent convinces us that the due process analysis relied upon by the district court was not clearly established federal law at the time Onifer's conviction became final.

Prior to the Supreme Court's decision in *United States v. DiFrancesco*, 449 U.S. 117 (1980) (holding that the double jeopardy clause did not apply to the increase of a sentence upon appeal), cases such as Onifer's were invariably considered under the double jeopardy clause, not under due process. For instance, in *Bozza v. United States*, 330 U.S. 160 (1947), the appellant had been convicted of violating a statute which required as its minimum mandatory sentence both a fine and imprisonment. *Bozza*, 330 U.S. at 167. At sentencing the trial judge only mentioned Bozza's mandatory term of imprisonment. Realizing his mistake a few hours later, the judge recalled Bozza and imposed the minimum fine

The Court of Appeals concluded that the trial court had been without jurisdiction to hear the original motion for resentencing and directed the lower court to reinstate Onifer's original sentence. *Michigan v. Macomb County Circuit Judge*, No. 25388-89, at 2 (Mich. Ct. App. Nov. 26, 1976). The trial court duly reinstated Onifer's original sentence on December 27, 1976. Several years later Onifer filed a delayed application for leave to appeal which was denied by the Michigan Supreme Court on November 1, 1979.

Between 1978 and 1979, Onifer filed three habeas corpus petitions in the Eastern District of Michigan, all of which were dismissed without prejudice for failure to exhaust state remedies. In 1984, he filed a delayed motion to vacate sentence, which was denied by the Macomb County Circuit Court. Subsequent appeals to the Michigan Court of Appeals and Michigan Supreme Court were denied as without merit on January 17, 1985, and July 23, 1985.

Onifer filed the present petition for a writ of habeas corpus on September 23, 1996. The petition was initially rejected for failure to file properly an *in forma pauperis* application, but was successfully refiled by Onifer on September 11, 1997. Before the district court, he argued that reimposition of his original sentence violated the Fifth Amendment's double jeopardy clause as well as due process. On December 16, 1999, the district court issued a memorandum opinion and order granting the writ on the grounds that Onifer's expectation of finality in his reduced sentence had crystallized upon his parole so that reimposition of the original sentence violated due process. The warden now appeals from the district court's order granting Onifer's petition for a writ of habeas corpus.

## II.

The warden initially argues that Onifer failed to present his due process arguments to the Michigan state courts and that those claims were therefore never adjudicated by the state courts. We agree with the district court that Onifer's claims

were presented to, and adjudicated by, the state courts.  In *Gray v. Netherland*, the Supreme Court observed that:

> In *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), we held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.
>
> . . . .
>
> We have also indicated that it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.

*Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).   In this case, Onifer identified both the constitutional rights that he claimed had been violated and the particular facts which supported his claims; he has thus done all that is required of him to present his constitutional claims to both the Michigan state courts and the district court.

### III.

This court reviews a district court's legal conclusions in a habeas proceeding de novo and its factual findings for clear error. *See Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). Onifer filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).  Our review is thus governed by 28 U.S.C. § 2254(d), which provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an  unreasonable application of, clearly established Federal law, as  determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The district court declined to apply AEDPA's deferential standard of review to the decisions of the Michigan state courts because  "[w]here, as here, the state courts did not adjudicate the petitioner's constitutional claims on the merits, the AEDPA does not apply, and the petitioner is entitled to plenary or *de novo* review of his claims."  *Onifer v. Tyszkiewicz*, No. 96-CV-10348-BC, at 6 (E.D. Mich. Dec. 16, 1999).  However, this court has held that even if a state court fails to articulate its reasoning for a decision on the merits, the deferential standards of AEDPA still apply:

> Other circuit courts have concluded that where the state court has not articulated its reasoning, federal courts are obligated to conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. . . .  That independent  review, however, is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.

*Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (citations omitted). The district court thus erred when it applied de novo review to Onifer's claims.   We turn now to Onifer's constitutional claims, asking whether state adjudication of his claims was "contrary to, or involved an  unreasonable application of, clearly established Federal law, as determined