**Robert SUMMERLIN, Petitioner,**

v.

**SHERIFF, HURON COUNTY, OHIO,**
**Respondent.**

**No. C 72-12.**

United States District Court,
N. D. Ohio, W. D.

June 5, 1972.

 

Ted Iorio, Toledo, Ohio, for petitioner.

Ronald A. Freeman, Pros. Atty., Huron County, Norwalk, Ohio, for respondent.

OPINION and ORDER

WALINSKI, District Judge.

Robert Summerlin was convicted by a three-judge panel in the Huron County, Ohio, Common Pleas Court, this pursuant to a violation of Ohio Revised Code, § 2905.34: the unlawful sale of an obscene, lewd or lascivious book, knowing said book to be obscene, lewd or lascivious. He was sentenced to serve not less than one nor more than seven years in the Ohio State Penitentiary.

The Court of Appeals of Huron County, in affirming the conviction, found the subject matter, a paperback book entitled "69 Potion", to be "hard core pornography." Thereafter, an appeal as of right was dismissed by the Ohio Supreme Court for lack of a substantial constitutional question, and the United States Supreme Court denied certiorari.

Collateral relief, pursuant to Ohio Revised Code, § 2953.21, was denied by the Huron County Common Pleas Court, the Court of Appeals of Huron County and the Ohio Supreme Court, the latter court again finding no substantial constitutional question to exist.

Mr. Summerlin has exhausted his state remedies, Title 28 U.S.C.A. § 2254, and the matter is before this Court for habeas corpus relief.

The Court's jurisdiction to entertain the petition is at issue, the respondent contending that Mr. Summerlin is not "in custody", pursuant to the statutory requirement. Title 28 U.S.C.A. § 2241. He has, in fact, been free on appeal bonds. Following the denial of certiorari, he requested the Ohio Supreme Court and the Court of Appeals of Huron County to continue his bond and stay execution pending disposition herein, but the request was denied in both courts. The Common Pleas Court has not, to this Court's knowledge, ruled on his request for continuation of bond and stay of execution, nor have they issued a warrant of execution of sentence. Thus, at this time, Mr. Summerlin is function-

ing in a state of limbo under the proverbial Sword of Damocles. The State of Ohio may of course, cause a warrant of execution to issue at any time.

While the Court is somewhat puzzled by the Huron County authorities' failure to act, either affirmatively or negatively, it need not guess as to either the benevolence or malevolence of their intentions; *viz.*, whether they have entertained second thoughts regarding prosecution or whether they are attempting to deprive this Court of jurisdiction by refusing to take physical custody of Mr. Summerlin. It is difficult to conceive of a factual situation more closely akin to actual physical custody and indeed, the Court is cognizant of authority designating individuals in less precarious positions "in custody" for purposes of jurisdiction. *See, e. g.,* Ouletta v. Sarver, 307 F.Supp. 1099 (E.D.Ark.), aff'd 428 F.2d 804 (8th Cir. 1970); Burris v. Ryan, 397 F.2d 553 (7th Cir. 1968); Mackenzie v. Barrett, 141 F. 964 (7th Cir. 1905), cert. denied, MacKenzie v. Pease, 203 U.S. 588, 27 S.Ct. 776, 51 L. Ed. 330 (1906); Marden v. Purdy, 409 F.2d 784 (5th Cir. 1969); Capler v. City of Greenville, 422 F.2d 299 (5th Cir. 1970); Settler v. Yakima Tribal Court, 419 F.2d 486 (9th Cir. 1969), cert. denied, 398 U.S. 903, 90 S.Ct. 1690, 26 L. Ed.2d 61 (1970); Goldberg v. Hendrick, 254 F.Supp. 286 (E.D.Pa.1966), cert. denied, 385 U.S. 971, 87 S.Ct. 507, 17 L. Ed.2d 434 (1966); Reis v. United States Marshal, 192 F.Supp. 79 (E.D.Pa.1961); Arbo v. Hegstrom, 261 F.Supp. 397 (D. Conn.1966) (habeas corpus available to one on bail); Choung v. California, 320 F.Supp. 625 (E.D.Cal.1970); United States ex rel. Schwartz v. Lennox, 320 F.Supp. 754 (E.D.Pa.1971) (habeas corpus available to one under stay of execution of sentence).

Any remaining doubt as to Mr. Summerlin's being "in custody" for purposes of habeas corpus, should be resolved by the Supreme Court's analysis of the jurisdictional statute in Carafas v. LaVallee, 391 U.S. 234, 239, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968):

" . . . the statute does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted. It provides that '[t]he court shall . . . dispose of the matter as law and justice require.' 28 U.S. C.A., § 2243."

The respondent's argument is without merit. Mr. Summerlin is sufficiently "in custody" to invoke this Court's habeas corpus jurisdiction.

The petitioner has alleged that he is in custody in violation of the United States Constitution. Title 28 U.S.C.A. §§ 2241, 2254. The grounds asserted for relief are as follows:

(1). The literary publication, to-wit: "69 Potion", the book the petitioner was convicted of selling, is protected by the First and Fourteenth Amendments to the Constitution, as material not being utterly without redeeming social value, being not patently offensive, and falling within contemporary community standards as not appealing to prurient interests.

(2). The Supreme Court of Ohio refused to review the merits of the petitioner's case. This action is contrary to the case of Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed. 2d 793 (1964), thereby depriving the petitioner of the privileges and immunities guaranteed by the First and Fourteenth Amendments to the Constitution of the United States. Mr. Justice Brennan, speaking for the court in that case stated,

"Since it is only obscenity that is excluded from Constitutional protection, the question of whether a particular work is obscene necessarily implicates an issue of Constitutional Law. Such an issue, we think, must ultimately be decided by this Court. Our duty admits of no substitute for facing up to the tough individual problems of constitutional judgment involved in every obscenity case."

With respect to the latter contention, it is clear that the privileges and immunities protected by the Fourteenth Amendment are only those which owe their existence to the federal government, its national character, its Constitution or its laws. The First Amendment freedoms are in a preferred position and are privileges of the citizens of the United States, guaranteed against state infringement by the Fourteenth Amendment.

As to whether this guarantee insures a corollary privilege of judicial determination as to whether the guarantee has been abridged, as the petitioner contends, there is some authority for such a contention: *see generally* Lawrence v. State Tax Comm., 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102 (1932); Greene v. Louisville & Interurban R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280 (1917); Smith v. Cahoon, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264 (1931); McLeod v. Peterson, 283 F.2d 180 (3d Cir. 1960).

In obscenity cases, the argument for mandatory judicial review appears to have been bolstered by a line of reasoning stemming from the case of Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). Mr. Justice Brennan, speaking for the Court in *Jacobellis*, did speak in terms of " . . . no 'substitute for facing up to the tough individual problems of constitutional judgment involved in every obscenity case.'" 378 U.S. at 188, 84 S.Ct. at 1678. What is important to note, however, is that Mr. Justice Brennan was speaking in terms of " . . . this Court", referring to the Supreme Court. *Id.*, at 188, 84 S.Ct. 1676. Be that as it may, an entire line of lower federal court cases appears to have adopted a standard of mandatory judicial review of obscenity questions. *See, e. g.*, Childs v. State of Oregon, 431 F.2d 272 (9th Cir. 1970), rev'd on other grounds, 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 542 (1971); Pinkus v. Pitchess, 429 F.2d 416 (9th Cir. 1970), aff'd mem., 400 U.S. 922, 91 S.Ct. 185, 27 L.Ed.2d 183 (1970); Wasserman v. Municipal Court, 449 F.2d 787 (9th Cir. 1970); Culbertson v. California, 385 F.2d 209 (9th Cir. 1967); Wenzler v. Pitchess, 359 F.2d 402 (9th Cir. 1966), cert. denied, 388 U.S. 912, 87 S.Ct. 2096, 18 L.Ed.2d 1351 (1967). In adopting this standard, the above-cited cases appear to have relied, at least in part, on a footnote to the text of the Court's opinion in *Jacobellis.*.

\* \* \* \* \* \*

"See also Lockhart and McClure, Censorship of Obscenity: The Developing Constitutional Standards, 45 Minn.L.Rev. 5, 116 (1960): 'This obligation—to reach an independent judgment in applying constitutional standards and criteria to constitutional issues that may be cast by lower courts "in the form of determinations of fact"—appears fully applicable to findings of obscenity by juries, trial courts, and administrative agencies. The Supreme Court is subject to that obligation, as is every court before which the constitutional issue is raised.'" Jacobellis v. Ohio, 378 U.S. 184, 188 n. 3, 84 S.Ct. 1676, 1678, 12 L.Ed.2d 793 (1964).

For some, the footnote is apparently adequate to sustain a self-imposed standard. It is quite another matter to say, as does the petitioner herein, that on this basis, this Court should impose a standard of mandatory judicial review in obscenity cases upon a State Supreme Court. The weakness of this argument is apparent, especially when viewed in light of the countervailing interest of the State in regulating the remedies and procedures of its courts. *See* Murphy v. Commonwealth of Massachusetts, 177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711 (1900); McKane v. Durston, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894); Andrews v. Swartz, 156 U.S. 272, 15 S. Ct. 389, 39 L.Ed. 422 (1895); Kohl v. Lehlback, 160 U.S. 293, 16 S.Ct. 304, 40 L.Ed. 432 (1895); Burns v. Ohio, 360´ U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959) (as to discretionary review); Horton v. Bomar, 335 F.2d 583 (6th Cir. 1964) (no constitutional right to appeal).

**340**

While the Court does not deem the Ohio Supreme Court's failure to review the merits of an obscenity case a violation of the Privileges and Immunities Clause of the Fourteenth Amendment, it is aware that the Great Writ, in view of its purpose, is peculiarly apropos to a case such as this. Mr. Summerlin has alleged that he is in custody in violation of the United States Constitution. It is claimed that the book he was convicted of selling is, under existing constitutional standards, protected by the First and Fourteenth Amendments.

It is becoming monotonously repetitious in the law to say that a publication is protected by the Constitution, even though it is, in the Court's opinion, pure garbage. This is, however, precisely the predicament in countless lower court obscenity cases. Should the United States Supreme Court say, "garbage publications are protected by the First Amendment", the predicament would cease considerably. As it is, however, we are told, among other things, that a publication is not obscene unless,

"... '(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value,' emphasizing that the 'three elements must coalesce,' and that no such material can 'be proscribed unless it is found to be *utterly* without redeeming social value.' A Book Named 'John Cleland's Memoirs of a Woman of Pleasure' v. Attorney Gen. of Massachusetts, 383 U.S. 413, 418–419, 86 S.Ct. 975, 977–978, 16 L.Ed.2d 1." Redrup v. New York, 386 U.S. 767, 770–771, 87 S.Ct. 1414, 1416, 18 L.Ed. 2d 515 (1967).

While it is difficult to imagine any form of sexual perversion, variation, deviation, fetish or juxtaposition not alluded to in the book "69 Potion", and while the Court is of the opinion that the dominant theme, taken as a whole appeals to a prurient interest in sex and is patently offensive, the Court is at the same time, aware of the teaching of *Jacobellis*:

"... material dealing with sex in a manner that advocates ideas, ... or that has literary or scientific or artistic value or any other form of social importance, may not be branded as obscenity and denied the constitutional protection." 378 U.S. at 191, 84 S.Ct. at 1680.

It has seemingly become a popular ploy to inject a microscopic quantity of pretentious social or clinical commentary into publications which would otherwise contain nothing more than a plethora of four-letter words and drooling commentary. "69 Potion" is no different. Although the Court cannot convincingly say that "69 Potion" is *utterly* without redeeming social value, it cannot honestly say that the book has any sincere redeeming value.

In a case such as this, having utilized the criteria of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney Gen. of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966) and Jacobellis v. Ohio, *supra*, without success, "... the circumstances of production, sale, and publicity are relevant in determining whether or not the publication or distribution of the book is constitutionally protected." Book Named etc. Memoirs v. Attorney Gen. of Massachusetts, *supra*, at 420, 86 S.Ct. at 978. In the instant case, exposure of the material to juveniles is not in issue by stipulation of the parties. Further, there is no evidence of pandering or obtrusive display to unwilling individuals. *See* Redrup v. New York, *supra*.

It is axiomatic that while this Court may adopt the state court findings of fact, it must independently apply federal constitutional standards. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Having done so

and having determined, for the afore-mentioned reasons, that the book "69 Potion" is not obscene, the Court finds that Robert Summerlin's conviction is void and he is in custody in violation of the Constitution of the United States.

Accordingly, it is ordered that the Writ of Habeas Corpus issue and the petitioner be discharged from custody, said conviction to be stricken from all records.