411 So.2d 966 (1982)
Howard HERRING, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-162.
District Court of Appeal of Florida, Third District.
March 30, 1982.
*967 Solomon & Mendelow and Harold Mendelow, Miami Springs, for appellant.
Jim Smith, Atty. Gen. and Paul Mendelson, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Despite the defendant's contention that he committed a single crime susceptible to a single conviction and sentence, the record reflects each of the fifteen counts of grand theft, second degree, constituted a separate offense. We do find, however, that each of the concurrent sentences imposed exceeded the five-year maximum allowable by law. §§ 812.014(2)(b), 775.082(3)(d), Fla. Stat. (1979). Accordingly, we vacate the sentences and remand for resentencing. Because it appears to have been its intent that the defendant receive a ten-year sentence, the trial court may, if it chooses, accomplish that sentencing goal by imposing consecutive sentences.[1]
We acknowledge that our authorization of this change from concurrent to consecutive sentences directly conflicts with the decision of our sister court in Pahud v. State, 370 So.2d 66 (Fla. 4th DCA 1979). We believe, however, that Pahud was wrongly decided ab initio and, moreover, has been overruled, sub silentio, by Villery v. Florida Parole & Probation Commission, 396 So.2d 1107 (Fla. 1981).

I.
In Pahud, the defendant was sentenced to two concurrent twenty-year terms of imprisonment. He moved to vacate both sentences as being in excess of the statutory maximum of ten years.[2] The trial court vacated the sentences and resentenced Pahud to two ten-year terms to run consecutively. Pahud appealed. The appellate court, acknowledging that it "would be inclined not to view this as an enhanced sentence for we see little if any difference in the result," felt bound by existing case law to reverse. Our review of the cases relied on in Pahud points us in an opposite direction.

A.
The court's reliance in Pahud on Brown v. State, 264 So.2d 28 (Fla. 1st DCA 1972), and United States v. Sacco, 367 F.2d 368 (2d Cir.1966), is misplaced. Those cases held that a trial court is not free to change a valid and unchallenged sentence.
In Brown v. State, supra, the defendant was sentenced on March 16, 1971, to five years imprisonment for possession of narcotics and five years for sale of narcotics, the sentences to run consecutively. On the following day, the trial court, sua sponte, resentenced the defendant to ten years on the sale count to run consecutively to the possession count. Brown then moved to vacate the five-year sentence for possession and the ten-year sentence for sale.[3] But unlike Pahud and unlike Herring in the case before us, Brown never sought to have vacated *968 the five-year sentence for sale imposed on March 16. Significantly, the appellate court stated:
"The [State's] reasoning [that the new sentence may be greater or may differ materially in effect from the previous sentence] would be correct if the entire March 16th sentence were invalid. Such, however, is not the situation here. Only the separate sentence for possession was illegal. The five year sentence for sale was not invalid by itself. Where two separate judgments or sentences are imposed together the legality of each must be determined separately." Brown v. State, supra, at 29. (emphasis supplied).
To the same effect is United States v. Sacco, supra. There, the court imposed a valid five-year sentence on Count I and an invalid seven-year sentence on Count II to run concurrently. The defendant attacked the sentence on Count II only as being in excess of the five-year maximum. The trial court then transposed the sentences, imposing the seven-year sentence on Count I and the five-year sentence on Count II. The appellate court merely held that the valid and unchallenged sentence on Count I could not be increased.[4]

B.
A second line of cases relied on in Pahud is represented by Kennedy v. United States, 330 F.2d 26 (9th Cir.1964), and Duggins v. United States, 240 F.2d 479 (6th Cir.1957), which, while arguably supporting Pahud, are, in our view, wrongly decided. In both, the defendant, sentenced on multiple counts, moved to vacate ten-year sentences imposed in excess of a five-year statutory maximum on certain of the counts. The trial courts reduced the challenged sentences to five years, but ordered that they run consecutively (not, as in the initial sentences, concurrently) with other valid and unchallenged five-year sentences. The appellate courts reversed, reasoning that although the only changed sentences were those which were attacked by the defendant, the defendant had a vested interest in so much of the original sentence that was *969 valid  its concurrency with other unchallenged sentences  which was not subject to change.[5],[6] This concept, that the concurrency aspect of a vacated sentence is forever sacrosanct and immune from change, is, in our view, erroneous. The cases which hold that an unattacked legal sentence cannot be disturbed when an illegal sentence is set aside and a new sentence imposed arise in a setting where a sentence on one count is legal and the sentence on another, illegal. In that context, the legal sentence is considered untouchable because it is self-contained. The error of Kennedy-Duggins, carried on in Pahud, is to pervert the "part legal-part illegal" rule by applying it to a single sentence on a single count and to declare that there is some vestigial legal part to an illegal sentence which must remain undisturbed when the illegal sentence is set aside. This "once concurrent-always concurrent" declaration simply flies in the face of the long-standing proposition that when, at the defendant's behest, a sentence is invalidated, the slate is wiped clean, and upon resentencing, any sentence which originally could have been imposed may be imposed.[7]Murphy v. Massachusetts, 177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711 (1900)[8] (holding constitutional state statute which provided, in pertinent part, "[W]hen a final judgment in a criminal case is reversed by the supreme judicial court on account of error in the sentence, the court may render such judgment therein as should have been rendered, or may remand the case for that purpose to the court before which the conviction was had."); Robinson v. Warden, Maryland House of Corrections, 455 F.2d 1172 (4th Cir.1972) (slate wiped clean when prisoner seeks reduced sentence under state statute providing for review by three-judge panel); Kitt v. United States, 138 F.2d 842 (4th Cir.1943) (when appellate court remanded for resentencing, the trial court was not restricted by the terms of the prior sentences, but instead could impose such sentences as were within the law as if no prior sentence has been imposed)[9]; State *970 ex rel. Rhoden v. Chapman, 127 Fla. 9, 10, 172 So. 56 (1937) ("where, at the request of a convicted defendant, or at his instance ... the court has vacated or annulled its presently imposed sentence ... the court may ... impose a new sentence upon the original judgment of conviction, even though such new sentence is greater, or materially different in effect from that first imposed and thereafter vacated.").

II.
Whatever vitality there may once have been in the Kennedy-Duggins-Pahud line, it is certainly now apparent that it should no longer sire successors. In North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held that a more severe sentence upon reconviction offends neither the double jeopardy nor equal protection clauses of the Constitution.[10] The only constitutional basis for attack on a second sentence after the first has been set aside is found in the due process clause of the Constitution which is offended only if the enhancement punishes the defendant for the exercise of rights guaranteed him. Specifically rejected in Pearce is the notion that for double jeopardy purposes, the imposition of a sentence is an "implied acquittal" of any greater sentence. See United States v. DiFrancesco, 449 U.S. 117, 135 n. 14, 101 S.Ct. 426, 436 n. 14, 66 L.Ed.2d 328, 345 n. 14 (1980). The rejection of the notion that there is some vested right in the length of a sentence necessarily includes the rejection of the notion that there is a vested right in any other part of a sentence. It is now quite simply the case that a criminal sentence, once pronounced, is not accorded the constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal. United States v. DiFrancesco, supra.
Consistent with the Pearce-DiFrancesco view of the limited reach of the double jeopardy clause is Villery v. Florida Parole & Probation Commission, supra. There the court held that incarceration pursuant to a split sentence or as a condition of probation which exceeds one year is invalid. Surely, were the theory of Kennedy-Duggins-Pahud correct, then a defendant seeking to set aside a sentence imposed in violation of Villery would have a vested interest in the legal part of the sentence, that is, the incarceration of less than one year and the probationary term, and therefore, the trial court, in correcting the sentence, could not disturb those parts. But Villery places no such restriction on the trial court:
"In correcting the order, the trial court has the option either of modifying the order to make it legal or of withdrawing it and imposing a sentence of imprisonment... ." 396 So.2d at 1112.
The sentence of imprisonment which may be imposed under Villery may equal the original total term of probation,[11] giving *971 credit for time already served in prison. Thus has Villery, mercifully, dealt the death blow to Pahud.

III.
Therefore, since a defendant who successfully seeks to set aside his sentence has no residual rights in the original sentence, the only remaining possible justification for Kennedy-Duggins-Pahud is that the change from concurrent to consecutive sentences constitutes an enhancement of the defendant's sentence in violation of due process rights guaranteed by North Carolina v. Pearce[12]:
"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." 395 U.S. at 725-26, 89 S.Ct. at 2080-81 (footnote omitted).
But no violation of due process occurs when sentences vacated at the defendant's instance are changed to accomplish the trial court's previously declared sentencing goal. Even if, arguendo, under Kennedy-Duggins-Pahud such a change were deemed an enhancement of the original penalty, it is, definitively, non-vindictive. Finally, because this change creates no concern about an unspoken retaliatory motivation, no separate reason justifying the change need affirmatively appear on the record to satisfy North Carolina v. Pearce, supra.[13]
Affirmed in part; reversed in part, and remanded for resentencing.
BASKIN, Judge (specially concurring).
While I am in accord with the majority holding insofar as it permits resentencing up to an aggregate sentence of ten years imprisonment, I believe United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) is inappropriate as a foundation for decision.
In DiFrancesco, the government, acting pursuant to 18 U.S.C. § 3576 (1976), which affords it a limited right to appeal,[1] sought to increase a sentence it considered too lenient. In the case before us, defendant Herring is the party appealing and, for that reason, is subject to the protections enunciated *972 in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). DiFrancesco clearly expresses the supreme court's intent: "We are not inclined to overrule Pearce." 449 U.S. n. 14 at 135, 101 S.Ct. n. 14 at 436, 66 L.Ed.2d n. 14 at 345. Thus, any semblance of vindictive action in increasing Herring's sentence would offend the supreme court prohibition against deterring a defendant's exercise of his right to appeal and would suggest a denial of due process. For that reason, the trial court may not, upon remand, impose consecutive sentences totaling more than the original ten-year sentences without record justification.
NOTES
[1] The new aggregate sentence may not exceed ten years unless the excess can be justified under North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). See discussion, infra.
[2] The twenty-year sentences were permissible only if imposed after a court-ordered psychiatric examination, which condition precedent was not satisfied.
[3] Brown's challenge to the possession sentence was under then existing case law prohibiting the imposition of separate sentences for two offenses which are facets of a single transaction. The law was changed in 1976 with the enactment of Section 775.021(4), Florida Statutes, requiring the court to sentence separately for each criminal offense committed during the course of one criminal transaction or episode. See Hegstrom v. State, 401 So.2d 1343 (Fla. 1981). Brown's challenge to the ten-year sentence for sale was based on the proposition that the trial court was not empowered to enhance the five-year sale sentence imposed the day before. While Brown v. State is inapposite to the case before us, we question whether, in light of recent developments in the area of the applicability of double jeopardy to resentencing, see, particularly, United States v. Busic, 639 F.2d 940 (3d Cir.1981); United States v. Hodges, 628 F.2d 350 (5th Cir.1980), the result in Brown would be the same today.
[4] This rule that added punishment under a valid and unchallenged sentence cannot be imposed to offset the defendant's successful challenge to an invalid sentence on a separate count, see also Chandler v. United States, 468 F.2d 834 (5th Cir.1972); United States v. Welty, 426 F.2d 615, 619 (3d Cir.1970) (Welty I), has been applied in other contexts to any increase in an unchallenged valid sentence. See, e.g., Safrit v. Garrison, 623 F.2d 330 (4th Cir.1980); United States v. Vera, 615 F.2d 1152 (6th Cir.1980); United States v. Frady, 607 F.2d 383 (D.C. Cir.1979); United States v. Adams, 362 F.2d 210 (6th Cir.1966). But see United States v. Busic, supra; United States v. Hodges, supra; United States v. Welty, 468 F.2d 594 (3d Cir.1972) (Welty II). Since the case before us does not involve a change in a valid and unchallenged sentence, see, e.g., Troupe v. Rowe, 283 So.2d 857 (Fla. 1973), we need not consider whether a sua sponte change which does not increase the combined sentences on several counts and is made to correct the erroneous transposition of the intended sentences, see Chandler v. United States, supra; United States v. Sacco, supra; compare United States v. Busic, supra, and United States v. Hodges, supra (where sentence on challenged counts vacated as impermissible in light of other valid sentences on separate counts, valid sentences could be vacated and sentences thereon increased without offending double jeopardy), should be constitutionally permissible, despite the usual double jeopardy proscription against a change in a final and valid sentence. See United States v. Sacco, supra, at 370 (Lumbard, C.J., dissenting).

"The majority opinion, in my view, is a bootstrap argument which justifies reversal of the order of the district court by calling it a name and that name is `increasing the sentence.' This is simply contrary to fact. The district judge was not increasing the sentence when he corrected the record. The sentence remained the same; the record was merely corrected so that the seven-year sentence would rest on the basis which was always there, namely, the conviction on count one. No one noticed the error at the time of sentence; no one supposed that the judge was doing anything beyond his power. The judge was in error not as to his power to impose a seven-year sentence but only as to which count gave him the power. What he did at the time of the sentence was correctly done except for the inadvertent error of miscalling the count."
Compare State v. Farber, 409 So.2d 71 (Fla. 3d DCA 1982); Neidinger v. United States, 647 F.2d 408 (4th Cir.1981); United States v. Ford, 632 F.2d 1354 (9th Cir.1980) (inadvertent sentences corrected before sentences became final).
[5] It is difficult to discern from United States v. Best, 571 F.2d 484 (9th Cir.1978), also relied on in Pahud, whether the defendant attacked each of the three sentences imposed or whether the court simply changed an unattacked sentence. There the defendant received three six-month sentences to run concurrently along with three years probation. The opinion does not indicate whether the probation was added on each of the three sentences. The defendant successfully asserted that the probationary term was invalid, since six months incarceration was the maximum. On resentencing, the trial court changed the six months incarceration on Counts II and III to three years probation to run consecutively to Count I. The resentence was held invalid. Since Best cites to Kennedy, we read it to fall into the vested interest class of cases.
[6] It is certainly arguable that making the newly imposed sentence consecutive instead of concurrent to an unchallenged valid sentence is, in effect, a change in the unchallenged valid sentence from concurrent to consecutive. Had this been the rationale of Kennedy and Duggins, then these cases would stand for no more than the rule announced in Brown and Sacco and, in the same manner, would be distinguishable from Pahud and the present case. Such a rationale, however, is not as readily available in cases (as Kennedy and Duggins) where more than one sentence is successfully attacked as invalid. In such cases, the new sentences on the invalidated counts could be made consecutive to each other.
[7] This long-standing proposition is still standing, qualified only by the proviso that the resentence does not violate due process. See United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); North Carolina v. Pearce, supra, n. 1, discussed infra.
[8] In Murphy, the court distinguished Ex Parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874), on the grounds that (a) in Lange the original sentence had been fully satisfied, and (b) Lange sought his release, not a vacation of the sentence. This distinction is overlooked in Pahud, which relies on Lange. The limited precedential value of Lange, as well as United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1930) (a court is empowered to reduce a sentence after service has begun), also relied on in Pahud, is made clear in United States v. DiFrancesco, supra, n. 7. Indeed, one court has noted the pervasive and misleading influence of the "now discredited decisions" in Lange and Benz. See United States v. Busic, supra, n. 3.
[9] In Kennedy v. United States, supra, the court attempted to distinguish the contrary holdings in Murphy v. Massachusetts, supra, and Kitt v. United States, supra, on the basis that Murphy and Kitt involved remands from appellate courts, whereas "in the instant case the original sentences were imposed by the District Court and the same court did the resentencing without any mandate from an appellate court," Kennedy v. United States, supra, at 29. While under this analysis the present case falls clearly within Murphy and Kitt, we simply cannot rely on this distinction without a difference. The fact that a defendant's conviction is overturned on collateral rather than direct attack is irrelevant to the question of whether he can be retried, North Carolina v. Pearce, supra, n. 1; United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). The difference between resentencing after retrial rather than after appeal is a conceptual nicety only. United States v. DiFrancesco, supra, n. 7. Courts are empowered to grant new trials and to correct sentences, and it is incongruous to accord greater relief (no resentencing allowed) to one who proceeds collaterally than to one whose rights are vindicated on direct review. United States v. Tateo, supra, 377 U.S. at 466, 84 S.Ct. at 1589.
[10] Pearce requires that credit for time served under the first sentence be given.
[11] The genesis of Villery was the complaint that lengthy imprisonment as a condition of probation denied the prisoner parole consideration. The court in Villery undoubtedly assumed that a change from probation to an equal amount of incarceration would not result in any actual additional incarceration for the prisoner, who would theoretically be released on parole no later than he would be released on probation. However, where that is not the case, and a prisoner is "punished" for exercising rights granted by Villery, a due process issue under North Carolina v. Pearce, supra, is presented. The imposition of a penalty upon a defendant for successfully pursuing a nonconstitutional rather than constitutional right is no less a violation of due process. North Carolina v. Pearce, supra, 395 U.S. at 724, 89 S.Ct. at 2080.
[12] This is apparently the rationale of Holloway v. State, 360 So.2d 140 (Fla. 2d DCA 1978), where the court condemned a resentencing after successful appeal and retrial of one case. The new sentence, originally concurrent to two other cases, was made consecutive.
[13] If, however, the new sentence exceeds ten years, the trial court will have to justify the excess by making its reasons "based on objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding" affirmatively appear in the record. See n. 1, supra.
[1] Florida has no provision permitting the state to appeal a defendant's sentence. The Habitual Offender Act, section 775.084, Florida Statutes (1979), although similar to the statute reviewed in DiFrancesco, does not authorize a state appeal.